[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12744

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERT BRANDON MALONE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cr-00432-RAH-JTA-1

_____

Before ROSENBAUM, TJOFLAT, Circuit Judges, and MOODY,[*] District Judge.

ROSENBAUM, Circuit Judge:

Some cases present novel issues that we must resolve without help from precedent. Others require us to faithfully apply well-established law. This case falls into the second camp. And the precedent that controls our analysis from start to finish comes from no less than the Supreme Court: *Puckett v. United States*, 556 U.S. 129, 135 (2009).

Defendant-Appellant Robert Malone seeks vacatur of his 71-month sentence. He contends the government breached his plea agreement by arguing at sentencing against recommendations it allegedly promised to make to support a lower sentence than Malone received. But Malone never objected at sentencing that the government failed to live up to its bargain. So under *Puckett*, we subject Malone's claims to plain-error review on direct appeal. Indeed, we and every other Circuit that have faced this scenario have reached the same conclusion: on direct appeal, *Puckett* requires us to engage in plain-error review when a defendant raises an unpreserved claim that the United States breached his plea agreement.

Because the courts (including ours) have uniformly applied *Puckett* to require plain-error analysis on direct appeal whenever a

_____

[*] The Honorable James S. Moody, Jr., United States District Judge for the Middle District of Florida, sitting by designation.

defendant claims breach of the plea agreement but did not object in the district court, a reader might wonder why we are bothering to publish this opinion. After all, faithfully applying controlling Supreme Court (and our own) precedent seldom warrants publication.

Here, though, our dissenting colleague has asked us to publish. And so we respect that request. In the Dissent's view, Malone's claim is not cognizable on direct appeal and must instead be brought in a collateral attack. But despite our respect for our thoughtful colleague, that's not what *Puckett* says. And in the thirteen years since *Puckett* issued, neither we nor any of our sister Circuits appears to have ever reached the Dissent's conclusion. Rather, everyone has applied plain-error review on direct appeal.

We therefore faithfully apply *Puckett*'s prescribed plain-error analysis here. And when we do that, we agree with Malone that the government breached the plea agreement in two ways. We also conclude that one of those breaches prejudiced Malone and seriously affected the fairness of the judicial proceedings. For that reason, we exercise our discretion to vacate Malone's sentence and remand for resentencing before a different district-court judge.

## I.

### A.    Charges and Plea Agreement

A grand jury indicted Malone on (1) three counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1–3); (2) one count of interstate transportation of a stolen motor vehicle, in violation

of 18 U.S.C. § 2312 (Count 4); and (3) one count of sale of a stolen motor vehicle, in violation of 18 U.S.C. § 2313 (Count 5).  After his arrest, Malone was released on bond under the condition, among others, that he would not commit any act in violation of state or federal law.

But once Malone was out on bond, he allegedly resumed the activities for which he was indicted—listing for sale and selling vehicles online that he did not own—by making another fraudulent vehicle sale in January 2020.

On February 7, 2020, in a petition for warrant, which was copied to the prosecutor, the probation officer recommended revocation of Malone's bond.  The petition alleged in some detail that Malone had attempted to defraud a couple, using a scheme involving a vehicle and a false company, which would have violated state criminal law.  After Malone was arrested and had his initial appearance on the petition in court, he waived his bond-revocation hearing, and a magistrate judge later revoked his bond.  The same day that Malone waived his bond-revocation hearing, he filed a notice stating his intent to change his plea on the charges for which he was indicted from not guilty to guilty.

Despite the government's knowledge of these events, five days later, on February 18, 2020, Malone and the government entered into a plea agreement at Malone's change-of-plea hearing. Under this plea agreement, Malone agreed to plead guilty to Counts 1 through 4 in exchange for the government's agreement to dismiss Count 5.  The government reserved the right to oppose

a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)[1] if it received information that Malone acted inconsistently with the acceptance of responsibility "between the date of the plea hearing and the date of the sentencing hearing." Notably, the government did not reserve the right to oppose the two-point reduction otherwise.

The government also agreed to move for a one-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b), "[p]rovided the defendant otherwise qualifies, and that the defendant does not, before the date of the sentencing hearing, either personally or through the actions of the defense attorney on behalf of the defendant, take any action inconsistent [with] the acceptance of responsibility." The agreement explained that "[d]etermination of whether the defendant met the defendant's obligations to qualify for a reduction pursuant to § 3E1.1(b) [was] at the sole discretion of the government."

Besides the government's agreements about Section 3E1.1 recommendations, the government also agreed "to recommend a

---

[1] U.S.S.G. § 3E1.1(a) instructs the sentencing judge to reduce the offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense." And (b) provides for another one-level reduction if (1) the defendant qualifies for a reduction under (a); (2) his offense level before a reduction under (a) was 16 or greater; and (3) the government moves for the reduction, "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." U.S.S.G. § 3E1.1(b).

sentence within the advisory Guidelines range as calculated by the Court at the sentencing hearing."

In return for the government's concessions under § 3E1.1, Malone agreed "to refrain from taking any action inconsistent with [his] acceptance of responsibility for the offenses to which [he was] pleading guilty," not to commit any other offenses while awaiting sentencing, and to provide truthful information to probation and the district court.[2]

Besides these provisions, the plea agreement included a section on breaches. The parties agreed that the district court would resolve, by a preponderance of the evidence, any issue of whether a party had breached at any time. And if either party received information causing a good-faith belief that the other party had breached the agreement, the parties agreed, the receiving party would promptly file a written or oral motion asking the district court to declare the other party had breached the agreement.

The parties agreed that Malone would breach the agreement if he (1) failed to fulfill his obligations under the plea agreement; (2) committed another crime; or (3) tried to withdraw his guilty plea or otherwise engaged in conduct inconsistent with his acceptance of responsibility. Should Malone breach his obligations, the

---

[2] Malone's plea agreement contained an appeal waiver, but we have held that an appeal waiver does not foreclose a claim that the government breached the plea agreement at sentencing. See United States v. Puentes-Hurtado, 794 F.3d 1278, 1281, 1284 (11th Cir. 2015).

agreement provided that the government would be free of its obligations under the agreement. On the other hand, if the district court found that the government breached its obligations, the agreement allowed Malone to cancel the agreement and be released from the appellate and collateral-attack waivers contained within it. But the parties agreed that a breach of the agreement by the government would not automatically entitle Malone to withdraw his guilty plea, and if he did seek to withdraw his plea because of the breach, he would have to file a motion under Federal Rule of Criminal Procedure 11(d).

Malone acknowledged that the district court was not bound by the plea agreement and that he understood that the district court would ultimately determine the guidelines range and sentence. He confirmed that the plea-agreement document set forth the entire agreement and that the government had made no promises to him outside it. In the addendum to the plea agreement, the parties stated that the plea agreement didn't include a cooperation agreement.

The district court accepted Malone's guilty plea and set the case for sentencing three months later.

## B.    Sentencing Hearing

Before the sentencing hearing, the probation office prepared a presentence investigation report ("PSR"). The PSR recommended against any guidelines adjustment for acceptance of responsibility. As a result, the PSR's recommended total offense level

was 23, and its criminal-history calculation recommended a category of III, leading to a recommended guidelines range of 57 to 71 months' imprisonment.

Also before the sentencing, Malone filed a sentencing memorandum. In it, he objected to the PSR's conclusion that he had not accepted responsibility. In support of his objection, he noted that he had pled guilty; had stated his regret for his actions during his interview with the probation officer; had admitted his offense conduct and all relevant conduct; and had been "respectful and helpful with the Court's time, the Government's prosecution and Probation's inquiry." Malone noted that with the two-point deduction for acceptance of responsibility that the government had agreed not to oppose based on pre-plea conduct and the third-point reduction that the government had agreed in the plea agreement to recommend, the total offense level would be 20. And with a criminal-history category of III, that would have yielded a guidelines range of 41 to 51 months' imprisonment.

The next day, the government filed a sentencing memorandum seeking a term of imprisonment of 66 months. It failed to explain its recommendation other than a general reference to the probation-recommended guidelines range and the § 3553(a) factors.

At the sentencing hearing, Malone requested a three-level reduction for acceptance of responsibility. He noted that if the district court granted him the first two points for acceptance of responsibility, the government had agreed to recommend the third.

Malone argued that he had never challenged and had confessed to the allegations in the indictment, so he had saved the court and prosecution time, effort, money, and energy. And he again stated that, in his interview with the probation officer, he had apologized for his behavior. He also pointed out that he had waived the hearing on the revocation of his pretrial release and had admitted guilt to the release violation, all before he had pled guilty under the plea agreement to four of the charges for which he was indicted.

The government argued against any reduction to Malone's guidelines range for acceptance of responsibility. Significantly, it expressly disavowed relying for its position on Malone's statements to the probation officer when the probation officer was preparing the PSR. Indeed, the government asserted that it had not been privy to any conversations during Malone's interview with the probation office so its position on acceptance of responsibility was based "solely on the conduct that occurred [in January 2020] after Mr. Malone was released" on bond in November 2019. The government argued that Malone's January 2020 offense (which, as we have mentioned, occurred post-arrest but pre-plea) was very similar to his indicted offenses and demonstrated a lack of acceptance of responsibility. Then, the government presented testimony from an investigator, Clint Lee, about Malone's January 2020 fraudulent sale. The government urged the district court to deny the reduction based on that conduct.

Malone maintained that he had taken responsibility in this case. His attorney explained that she could not "properly defend Mr. Malone about [the January 2020] accusations . . . in a county where [she had] no discovery."

The district court denied Malone's objection and request for a reduction based on the PSR, the arguments of counsel, and the in-court testimony. It added that Malone had been charged with similar fraudulent conduct after his release on bond, and the PSR reflected "inconsistencies at best" that raised questions about whether Malone had accepted responsibility. The district court adopted the factual findings in the PSR, including that the guideline range was 57 to 71 months' imprisonment.

Malone then sought a downward variance. He asserted that his criminal history was slightly inflated because it was raised from II to III for a conviction over ten years old, for reckless endangerment for weaving in and out of traffic. He asked the district court to decrease his criminal history to II because, in his view, the conviction did not bear on the criminal activities for which he was before the court, and it had occurred a long time ago. He also argued that clinical forensic psychologist Dr. Catherine L. Boyer's testimony about Malone's childhood trauma, mental-health issues, and substance-abuse issues should be considered as mitigation evidence. Malone requested a 36-month sentence.

The government argued against the downward variance. It asserted that Malone did not truly care, despite Malone's statement that he regretted his behavior, and that he was a really good liar.

According to the government, Malone had no integrity, and when the prosecutor thought about Malone, he said, "sociopath came to mind." The government further argued that Malone was a con artist and "simple thief." And though the government said it recommended a 66-month sentence in the middle of the guidelines range, it still stated that "[q]uite honestly, I don't think it's enough" and that "[i]f I had my way about it, it probably would have been double or triple that." Indeed, the government opined that it had "no doubt" that, as soon as Malone was released, he would continue his criminal conduct.

Malone, through counsel, again admitted his guilt and apologized. He disagreed that he would continue to commit crimes upon release and asserted that 66 months' imprisonment was a fairly severe punishment. Malone also gave his own statement and apologized.

The district court declined to award Malone any deduction for acceptance of responsibility. It also denied Malone's motion for a downward variance. Stating that it considered the Sentencing Guidelines, the arguments of counsel, and the 18 U.S.C. § 3553(a) factors, the district court sentenced Malone to 71 months' imprisonment on each count, to be served concurrently, and three years of supervised release.

Malone now appeals, asserting that the government breached the plea agreement by relying on Malone's pre-plea conduct to argue against acceptance of responsibility and by effectively arguing against a sentence within the guidelines range.

## II.

We have jurisdiction over this appeal from a final judgment of conviction and imposition of sentence in the United States District Court for the Middle District of Alabama under 28 U.S.C. § 1291.

## III.

Normally, we review de novo whether the government has breached a plea agreement.  But that's when the defendant has preserved the issue in the district court. *United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008).  In contrast, when, as here, the defendant did not object before the district court that the government breached a plea agreement, we review on direct appeal for plain error.[3] *Puckett*, 556 U.S. at 133–34; *United States v. Sosa*, 782 F.3d 630, 637 (11th Cir. 2015) (citing *Puckett*, 556 U.S. at 133–34; *De La Garza*, 516 F.3d at 1269; *United States v. Romano*, 314 F.3d 1279, 1281 (11th Cir. 2002) (Tjoflat, J.); *United States v. Thayer*, 204

---

[3] We are not big fans of string citations.  But as we have mentioned, the Dissent argues we are doing something new today by considering on direct appeal, under plain-error review, Malone's unpreserved claim that the government breached the plea agreement.  Our precedent shows that is not the case.  So we string cite some cases where we have done the same thing that we do today.  As these cases reflect, even before *Puckett* issued, we reviewed on direct appeal, under a plain-error analysis, unpreserved claims that the government had breached the plea agreement.

F.3d 1352, 1356 (11th Cir. 2000); *United States v. Hedges*, 175 F.3d 1312, 1317 (11th Cir. 1999) (Tjoflat, J.).

We find plain error when (1) an error has occurred, (2) the error was plain, and (3) it affected the defendant's substantial rights, and if those prongs are met, we then have discretion to correct the error if it (4) seriously affected the fairness of the judicial proceedings. *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). A defendant's substantial rights are affected if the error "affected the outcome of the district court proceedings." *Puckett*, 556 U.S. at 135 (quoting *Olano*, 507 U.S. at 734). When the alleged plea-agreement breach relates to sentencing, "the 'outcome' [the defendant] must show to have been affected is his sentence." *Id.* at 142 n.4. "In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016).

## IV.

In his sentencing memorandum, Malone noted that he had pled guilty under a plea agreement and the government had agreed to recommend a three-point reduction for acceptance of responsibility and a sentence within the guidelines range. *See* Malone's Sentencing Memorandum at 1. But he concedes that he did not object to the government's alleged breaches during the sentencing hearing before the district court. Malone therefore argues on appeal under the plain-error standard. He asserts the government

breached the plea agreement in two ways: (1) by opposing an acceptance-of-responsibility reduction for reasons that violated the plea agreement, and (2) by paying mere lip service to recommending a sentence within the guidelines range but then also advocating for a higher sentence.

"[I]n determining whether the government has breached a plea agreement, we must first determine the scope of the government's promises." *United States v. Copeland*, 381 F.3d 1101, 1105 (11th Cir. 2004). To evaluate the scope of the government's promises, we ask whether the government's conduct conflicted with the defendant's reasonable understanding of the government's promises when he entered his guilty plea. *Sosa*, 782 F.3d at 637. A plea agreement's unambiguous meaning controls. *Copeland*, 381 F.3d at 1106. "A material promise by the government, which induces a defendant to plead guilty, binds the government to that promise." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016) (quoting *United States v. Thomas*, 487 F.3d 1358, 1360 (11th Cir. 2007)). Thus, "the government breaches a plea agreement when it fails to perform the promises on which the plea was based." *Id.* In the event of a breach, we may remand the case for resentencing before a different judge so that the defendant may be sentenced under the agreement. *Id.* at 1329.

We divide our analysis of the government's alleged breaches here into three parts. First, we consider whether Malone has established the first three prongs of plain error—(1) error (2) that is plain and (3) that affected Malone's substantial rights—on his claim

that the government breached the plea agreement by arguing against Malone's receipt of a reduction for acceptance of responsibility. Second, we conduct that same analysis of Malone's claim that the government violated the plea agreement by effectively recommending a sentence outside the guidelines range. And third, because we conclude that Malone has satisfied the first three prongs of plain-error review on his first claim, we evaluate whether any error seriously affected the fairness of the judicial proceedings. Because we conclude it did, we vacate Malone's sentence and remand for resentencing before a different district-court judge.

## A.

Malone first argues that the government breached the plea agreement by opposing his request for an acceptance-of-responsibility reduction based on his conduct that occurred before he signed the plea agreement. The terms of the agreement stated that the government would oppose the reduction only if it learned that, "between the date of the plea hearing and the date of the sentencing hearing, [Malone] . . . acted inconsistent [with] the acceptance of responsibility." Thus, Malone asserts, the government had a right to oppose such a reduction only if his release violation occurred between February 18, 2020, when he signed the plea agreement, and July 9, 2020, the date of the sentencing hearing.

But the government opposed the reduction based solely on Malone's January 2020 conduct. So Malone contends the government breached the plea agreement. He argues this breach prejudiced him because the district court denied any reduction for

acceptance of responsibility, which resulted in a higher guidelines range for his sentence. We agree.

The plain language of the agreement shows the government implicitly agreed not to object to the two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) unless it received information that Malone acted inconsistently with acceptance of responsibility "between the date of the plea hearing and the date of the sentencing hearing." A reasonable person would understand this promise to prohibit the government from objecting to an acceptance-of-responsibility reduction based solely on Malone's conduct that occurred before he entered the plea agreement—especially when both parties knew the government was aware of that pre-plea agreement conduct when it entered the plea agreement. *See Copeland*, 381 F.3d at 1105 (explaining that we "apply an objective standard" that considers "what the defendant reasonably understood when he entered his guilty plea" to interpret a plea agreement).

Here, when the government entered into the plea agreement with Malone, it knew of Malone's post-arrest, pre-plea conduct on which it later based its opposition to the acceptance-of-responsibility reduction at sentencing. We know this because (1) the government received a copy of the probation officer's February 7 (signed February 6), 2020, petition seeking the arrest of and bond revocation for Malone based expressly on the very same post-arrest, pre-plea conduct; (2) the government would have been present on February 10, 2020, during Malone's initial appearance after

his arrest on the warrant the magistrate judge issued as a result of the probation officer's petition; and (3) the government also received electronic notice of the February 7 petition, the minute entry for Malone's February 10 initial appearance, the court's oral order setting a bond-revocation hearing for February 13, Malone's February 12 waiver of detention hearing, and the district court's order granting the probation officer's motion to revoke bond and canceling the February 13 revocation hearing.

Yet the government expressly stated that it based its recommendation against acceptance of responsibility "solely" on Malone's post-arrest, pre-plea conduct that was the subject of these actions. In choosing to hang its acceptance-of-responsibility argument on only Malone's post-arrest, pre-plea conduct—conduct it promised it would not rely upon—the government breached its agreement by arguing that Malone should not receive the acceptance-of-responsibility reduction.

Although the government now asserts that Malone's alleged continued criminal conduct and statements to probation were inextricably intertwined, it did not assert this before the district court and instead expressly relied solely on Malone's criminal conduct before he entered into the plea agreement. In fact, as we've noted, at sentencing, the government explicitly denied relying on Malone's alleged statements to the probation officer because the government wasn't present when Malone made them. Given the plain language of the plea agreement and the government's statements at sentencing about the basis for its recommendation, the

government plainly breached the plea agreement by arguing against an acceptance-of-responsibility reduction based on Malone's pre-plea conduct.

The government's error also affected Malone's substantial rights. The government does not dispute that the provision was material, meaning the government's promise affected Malone's decision to plead guilty and thus waive his fundamental right to have all the counts proven beyond a reasonable doubt at a jury trial. *Thomas*, 487 F.3d at 1360. Rather, the government argues that probation already recommended denying the reduction and that the district court could have reached the same conclusion regardless of its recommendation.

That's certainly true. But it ignores that the district court stated it relied in part on counsel's argument when it denied the reduction. The district court's explanation for its denial of an acceptance-of-responsibility reduction reveals a reasonable probability that the breach affected the district court's decision to deny the reduction. *See Puckett*, 556 U.S. at 135.

After all, at the very least, the government's objection to the acceptance-of-responsibility adjustment would not have been in the record if the government had complied with its plea-agreement promise. But because the district court explained that it relied in part on the government's argument in denying the acceptance-of-responsibility adjustment, we cannot say that Malone "likely would not have obtained" the reduction for acceptance of responsibility, regardless. *Id.* at 142. Any reduction for acceptance of

responsibility would have resulted in a lower guidelines range. So we must conclude that Malone has made "a specific showing of prejudice," and the error "affected the outcome of the district court proceedings." *See id.* at 135, 142; *see also Molina-Martinez*, 578 U.S. at 201 ("[A] defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder.").

## B.

Malone also contends the government breached the plea agreement by, after agreeing to recommend a guidelines sentence, effectively arguing for a substantially higher sentence. He asserts the government's promise to recommend a guidelines-range sentence was a material term of the plea agreement. Yet at sentencing, Malone complains, the government did not remain faithful to that promise. To be sure, the government said it was recommending 66 months' imprisonment. But Malone notes that it still followed that up by saying it did not "think [66 months was] enough" and that "double or triple [the recommended sentence]" would have been more appropriate. Malone also objects to the government's suggestion at sentencing that he was a "sociopath" and its comparison of his non-violent offenses to serious violent crimes.

The government may oppose Malone's request for a downward variance but may not advocate a position contrary to its agreed-upon recommendation. *United States v. Taylor*, 77 F.3d 368, 371 (11th Cir. 1996). In *Taylor*, we described the government as having paid mere "lip service" to the plea agreement when it

20-12744          OPINION OF THE COURT          20

recommended a ten-year sentence but advocated a position requiring a longer sentence.[4] *Id.* As we explained, the government's arguments in *Taylor* affirmatively supported a position inconsistent with the plea agreement. *Id.* So we held that recommending the agreed-upon sentence could not rectify the breach committed when the government made a contradictory argument. *Id.*

Here, the government breached its promise in the plea agreement to recommend a sentence within the guidelines range by advocating for an above-guidelines sentence. Even though the government stated at sentencing that it recommended a 66-month

_____

[4] The Dissent criticizes our reliance on *Taylor* because a portion of *Taylor* relied on *United States v. Boatner*, 966 F.2d 1575 (11th Cir. 1992), a case that appears to contravene our earlier precedent in *United States v. Block*, 660 F.2d 1086 (5th Cir. Unit B 1981). Dissent at 40 n.32. But the portion of *Taylor* on which we rely does not rest on *Boatner*. Rather, it is anchored in *United States v. Grandinetti*, 564 F.2d 723 (5th Cir. 1977), where "we held that 'the defendant did not receive the benefit of his bargain' because the government was 'not only an unpersuasive advocate for the plea agreement, but, in effect, argued against it.'" *Taylor*, 77 F.3d at 371 (quoting *Grandinetti*, 564 F.2d at 727). For further support, we cited *United States v. Canada*, 960 F.2d 263 (1st Cir. 1992), and noted that there, "the First circuit held under almost identical facts that the 'lip service' the government paid the agreement did not cure its breach." *Taylor*, 77 F.3d at 371 (quoting *Canada*, 960 F.2d at 269). As for *Boatner*, we do not rely on it at all. And though we take no issue with the Dissent's criticism of this thirty-year-old case that we do not cite, *see* Dissent at 38–40 & n.32, most respectfully, we fail to see the relevance of that case here. Indeed, even the Dissent notes that we do not advocate for the position *Boatner* espoused. *See* Dissent at 38 (describing *Boatner* as "even worse" than our (incorrectly) characterized position).

sentence, it then said that this was not enough and that Malone deserved a sentence two or three times higher—an argument at war with its "recommendation." For these reasons, error that was plain occurred here.

But Malone cannot show that the government's breach of this aspect of the plea agreement violated his substantial rights because he cannot prove prejudice. Here, despite the government's breach, the district court still sentenced Malone within the guidelines range as the court calculated it during the sentencing hearing. And that was all Malone could argue the government had agreed to recommend under this part of the plea agreement. So we do not conclude that Malone satisfied the plain-error standard with respect to the government's violation of its commitment to recommend a sentence within the guidelines range. Nevertheless, as we have explained, there is no question that the government breached the agreement, and that is not acceptable. The government must do better. "[W]hile [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).

## C.

As we have discussed, the government plainly breached the plea agreement by arguing against any acceptance-of-responsibility reduction based on solely pre-plea conduct, and that error affected Malone's substantial rights. So we must consider whether the error seriously affected the integrity, fairness, or public reputation of the proceedings. We conclude it did.

An error may satisfy this standard "independent of the defendant's innocence." *Olano*, 507 U.S. at 736–37. But the simple fact that a plain error affecting substantial rights has occurred is not enough by itself to meet this requirement. *Id.* at 737. Rather, we apply the fourth prong "on a case-specific and fact-intensive basis." *Puckett*, 556 U.S. at 142.

Here, as we have noted, the government objected to any reduction for acceptance of responsibility, and by the government's own argument, it did so based "solely" on Malone's pre-plea conduct. That violated the plea agreement. Notably, the government expressly disavowed any objection to the reduction based on Malone's alleged statements to the probation officer about his post-arrest, pre-plea conduct, reasoning that it wasn't "privy to any [such] conversations."

Not only that, but the government violated not one, but two provisions of the plea agreement. As a reminder, the government breached the plea agreement in a second way when it argued that if it "had [its] way . . . , [the government's sentencing recommendation] probably would have been double or triple [66 months' imprisonment]." While we don't find plain error based on that violation, we can't disregard its exacerbation of the government's first violation. Indeed, "when the Government reneges on a plea deal, the integrity of the system may be called into question." *Id.* at 142–43.

And here, the government's sole reliance in violation of the plea agreement on Malone's post-arrest, pre-plea conduct to

20-12744    Opinion of the Court    23

oppose a reduction for acceptance of responsibility may have resulted in a guidelines range two or three levels higher than it otherwise would have been at Malone's sentencing—corresponding to a sentencing range of 57 to 71 months' imprisonment, rather than 41 to 57 months.[5]  And on top of that, the government's argument for a sentence two to three times the guidelines range may well have ensured that Malone received the highest possible guidelines sentence under the aggravated guidelines level.

We are concerned that, on this record, the government's repeated, clear violations of the plea agreement "seriously affect[ed] the fairness, integrity [and] public reputation of judicial proceedings." *Id.* at 135 (quoting *Olano*, 507 U.S. at 736); *see also United States v. Kirkland*, 851 F.3d 499, 505 (5th Cir. 2017) ("[T]he courts have recognized that the Government's breach of a plea agreement constitutes a particularly egregious error that, in the absence of

---

[5] Malone's guidelines level would have been two levels lower had he received acceptance of responsibility under U.S.S.G. § 3E1.1(a) or three levels lower had he received both that and the third point for super-acceptance of responsibility.  That the government knew of Malone's post-arrest, pre-plea conduct when it agreed to move for another one-point reduction under § 3E1.1(b), provided Malone did not "take any action inconsistent with the acceptance of responsibility" "before the date of the sentencing hearing" suggests that, in deciding whether to move for the third point reduction, the government would not rely on Malone's post-arrest, pre-plea conduct that occurred before it entered the plea agreement on February 18, 2020.  Otherwise, the government made a promise it never intended to keep, even if Malone behaved unassailably in every possible way after he entered into the plea agreement.

strong countervailing factors, seriously affects the fairness, integrity, or public reputation of judicial proceedings."); *United States v. Whitney*, 673 F.3d 965, 974 (9th Cir. 2012) ("[I]n the absence of clearly countervailing factors, the government's breach of the parties' plea agreement must be considered a serious violation of the integrity of the plea bargain process and the judicial system."); *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004) ("[V]iolations of the plea agreements on the part of the government . . . directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." (quoting *United States v. Barnes*, 278 F.3d 644, 648 (6th Cir. 2002)) (citation and internal quotation marks omitted); *United States v. Dawson*, 587 F.3d 640, 648 (4th Cir. 2009) ("We have long recognized that a government that lives up to its commitments is the essence of liberty under law, and the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated." (cleaned up)).

For that reason, we exercise our discretion to vacate Malone's sentence and remand for resentencing before a different judge. *See Hunter*, 835 F.3d at 1329 (explaining that there "are two remedies available when a plea agreement is breached: (1) remand the case for resentencing according to the terms of the agreement before a different judge or (2) permit the withdrawal of the guilty plea.").

Of course, nothing precludes the government on remand from opposing reduction of Malone's guidelines range for failure to accept responsibility, based on post-arrest, post-plea conduct. So the government could argue that Malone's alleged statements during his PSR interview provide a reason not to reduce Malone's guidelines level for acceptance of responsibility, since those occurred after Malone entered his guilty plea. But that the government wasn't "privy to any [such] conversations" remains unchanged. So based on the government's own statements for its reasons it did not rely on these statements during Malone's original sentencing, we cannot assume that it would rely on those same statements on remand.

## V.

Next, we turn to the Dissent's contentions that we have improperly found plain error. The Dissent asserts that our conclusion is wrong because the Dissent claims a collateral attack is "necessary to develop a complete factual record as to why Malone's attorney did not object." Dissent at 25. It also contends that our decision "is fundamentally premised on the idea that the Government can withhold evidence (like the investigator's testimony) from sentencing judges based on promises made in plea agreements." *Id.* at 37. Supreme Court precedent forecloses the Dissent's first argument here, and the Dissent's second argument does not follow even a little bit from our holdings today.

First, the Dissent insists that, on direct appeal, Malone cannot raise his claim that the government violated its obligation

under the plea agreement to not object to a two-point reduction for acceptance of responsibility based on any conduct predating Malone's entry into the plea agreement. *See id.* at 23–25. Rather, in the Dissent's view, when plain error takes the form of a defendant's failure to object to the government's breach of a plea agreement, the district court must treat a defendant's claim based on that breach as a claim for ineffective assistance under the Sixth Amendment, unless one of the parties has affirmatively done something during the sentencing proceeding to alert the district court that the plea agreement covers the particular breach the defendant later raises on appeal. *See id.*

But that's not what *Puckett* or any of our precedent or any precedent from any of our sister Circuits holds. In fact, the case law forecloses the Dissent's argument.

We start with *Puckett*. There, Puckett pled guilty and entered into a plea agreement. 556 U.S. at at 131. In the plea agreement, the government agreed that Puckett had shown responsibility and therefore qualified for a three-level reduction to his offense level. *Id.* Consistent with its obligations, the government moved for the court to reduce three levels for acceptance of responsibility whatever Puckett's guidelines level turned out to be. *Id.* at 131–32.

Because of Puckett's health problems, sentencing did not occur for almost three years after that. *Id.* at 132. In the intervening period, Puckett committed another crime, which he confessed to the probation officer. *Id.* The probation officer then filed an

addendum to Puckett's PSR, recommending that Puckett receive no adjustment for acceptance of responsibility. *Id.*

At Puckett's sentencing, Puckett objected to the addendum and noted that the government had filed a motion recommending the full three-level reduction. *Id.* For her part, the prosecutor responded that the government had filed its motion before Puckett had engaged in the additional criminal conduct and that the government opposed any such reduction. *Id.* The district judge stated that "even assuming he had the discretion to grant the reduction, he would not do so" because Puckett had engaged in more criminal conduct after he pled guilty. *Id.* During the sentencing, Puckett's counsel never objected that the government was violating its obligations under the plea agreement. *Id.* at 133.

On direct appeal, for the first time, Puckett argued that the government breached the plea agreement at sentencing. *Id.* The government conceded that it had but asserted that Puckett had forfeited his claim because he did not object in the district court. *Id.* The Fifth Circuit applied the plain-error standard to Puckett's claim. *Id.* After finding that "error had occurred and was obvious," the Fifth Circuit still denied Puckett's claim because Puckett failed to show prejudice. *Id.*

The Supreme Court affirmed. *Id.* at 134. It confirmed that the plain-error standard applied to Puckett's claim on direct appeal. *See id.* at 143. After all, the Court emphasized, that's what Federal Rule of Criminal Procedure 52(b) requires. *Id.* at 136. Indeed, the plain text of Rule 52(b) specifies that "[a] plain error that affects

substantial rights may be considered *even though it was not brought to the court's attention.*" Fed. R. Crim. P. 52(b) (emphasis added).

But although the Supreme Court held that plain-error review applied, it determined that Puckett's claim necessarily failed under the third prong of the plain-error standard because Puckett could not show that the government's breach prejudiced him. 556 U.S. at 142. After all, the district court assumed that the government's motion for the three-point reduction for acceptance of responsibility was still valid, but the court said it did not matter to the sentence the court imposed. Rather, the court said it based its sentence on Puckett's criminal activity after he entered the plea agreement.

Malone's case is like Puckett's in that his counsel failed to object when the government breached the plea agreement at sentencing. So we must review Malone's claims for plain error. But unlike Puckett, Malone showed prejudice resulting from the breach. So while the Supreme Court affirmed Puckett's sentence for failure to show plain error, we vacate Malone's sentence because we conclude that all four prongs of plain error are established here.

*Puckett* shows the proper framework for resolving a claim that the government breached the plea agreement when defense counsel did not object during the sentencing: on direct appeal, under the plain-error framework. We observe that the Supreme Court did not conclude that the Fifth Circuit should not have

considered Puckett's claim on direct appeal. Nor did it suggest that Puckett should have brought his claim instead as an ineffective-assistance claim in the context of a § 2255 motion. The Supreme Court likewise did not ponder, as the Dissent suggests we and the district court here should, why defense counsel failed to object at the sentencing to the government's breach of the plea agreement. Rather, the Supreme Court considered simply whether the government breached the plea agreement and whether it was "clear or obvious, rather than subject to reasonable dispute." *Id.* at 135; *see also id.* at 143. And the Dissent's contention that "a collateral attack is necessary to develop a complete factual record as to why Malone's attorney did not object," Dissent at 25, conflicts with *Puckett* and lacks any supporting precedent.

In implicit recognition that *Puckett* requires a plain-error analysis on direct appeal (and conflicts with the Dissent's contention that a claim like Malone's must instead be brought as an ineffective-assistance claim in a § 2255 motion), the Dissent attempts to cabin *Puckett* to its facts.

The Dissent argues that, though Puckett did not object to the government's breach of the plea agreement there any more than Malone did here, the district court in *Puckett* was still "alerted" that the government had breached its promise in the plea agreement to recommend a reduction for acceptance of responsibility. Dissent at 16 n.14. To explain why, the Dissent points to the fact that *three years before* the government argued against the third point at sentencing, it moved for the third point of the

acceptance-of-responsibility reduction. *See id.* According to the Dissent, "the government would have only moved for an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if a defendant had pled guilty." *Id.* And, the Dissent continues, "the district court would have understood that the government only made [its original] motions due to a plea agreement." *Id.* The Dissent then reasons, "So, when the government withdrew these motions, the district court would have been alerted that the government was changing its position and would have known it needed to step in to figure out whether the government was going back on its word." *Id.*

But the Dissent cannot point to a single opinion where any court has ever given *Puckett* the reading the Dissent imposes on it. And even if it could—which it doesn't—Malone's case must be reviewed for plain error even under the Dissent's novel reading of *Puckett*.

For starters, the Dissent's position is in conflict with *Puckett*'s own explanation of what constitutes plain error in a case when the defendant alleges for the first time on appeal that the government breached the plea agreement. The Supreme Court there explained that an error in this context is "plain" when the government's breach is not "open to doubt." *Puckett*, 556 U.S. at 143. Indeed, the Court continued, "Plea agreements are not always models of draftsmanship," so "the Government will often have a colorable (albeit ultimately inadequate [for purposes of establishing error]) excuse for its nonperformance." *Id.*

So it's no wonder that no court we are aware of has ever read *Puckett* the way the Dissent urges. Nor does the Dissent cite even one court that has in the thirteen years since *Puckett* issued. On the other hand, many courts—including our own—have applied *Puckett* as we do today.

Take *Sosa*, 782 F.3d 630—another case the Dissent relies on, *see* Dissent at 2 n.2—for example. There, the defendants pled guilty under plea agreements. 782 F.3d at 633. After the district court imposed its sentence, it issued a preliminary forfeiture order as to the defendants' two houses to satisfy a personal money judgment. *Id.* at 635. Then the government moved to amend the preliminary forfeiture order, seeking forfeiture of more substitute assets in the form of three cars, besides the two houses. *Id.* Although the defendants objected to the government's motion to amend the forfeiture order, they did not object to the forfeiture of the cars. *See id.* at 637. Nor did they argue that the government had breached their plea agreements. *Id.* But on direct appeal, the defendants argued for the first time that the government breached their plea agreements by seeking to forfeit their cars. *Id.*

We held that, under *Puckett*, we must review the issue for plain error. *Id.* When the district court granted the government's motion to amend the forfeiture order, other than that the district court had accepted the defendants' guilty pleas in connection with their plea agreements, nothing "alerted," Dissent at 16 n.14, the district court that the plea agreement covered forfeiture. Yet we said

*Puckett* required us on direct appeal to review the alleged breach for plain error. *See* 782 F.3d at 637. So too here.[6]

Our sister Circuits who have faced the situation we did in *Sosa* and we do here have also applied *Puckett* precisely as we do today. That is, they have likewise required plain-error review when the government allegedly breaches the plea agreement and the defendant does not object—no matter if the government made and withdrew a required recommendation or otherwise somehow supposedly "alerted" the district court at sentencing to the plea agreement. *See, e.g.*, *United States v. Lessard*, 35 F.4th 37 (1st Cir. 2022); *United States v. MacPherson*, 590 F.3d 215 (2d Cir. 2009); *United States v. Dahmen*, 675 F.3d 244 (3d Cir. 2012); *United States v. Edgell*, 914 F.3d 281 (4th Cir. 2019); *Kirkland*, 851 F.3d at 499; *United States v. Keller*, 665 F.3d 711 (6th Cir. 2011); *Dawson*, 587 F.3d at 640; *United States v. Smith*, 590 F.3d 570 (8th Cir. 2009); *Whitney*, 673 F.3d at 965; *United States v. Mendoza*, 698 F.3d 1303 (10th Cir. 2012); *United States v. Murray*, 897 F.3d 298 (D.C. Cir. 2018).

---

[6] Our pre-*Puckett* precedent reflects the same thing: no matter if the parties somehow "alert[]" the district court at sentencing that a plea agreement covers the unobjected to breach, we reviewed on direct appeal, under a plain-error analysis, unpreserved claims that the government had breached the plea agreement. *See, e.g.*, *De La Garza*, 516 F.3d at 1269; *Romano*, 314 F.3d at 1281; *Thayer*, 204 F.3d at 1356; *Hedges*, 175 F.3d at 1317.

None of this is surprising. After all, it is never a secret to the district court that a defendant has pled guilty under a plea agreement. Indeed, when the parties enter into a plea agreement, they must file the plea agreement with the district court, and the district court must affirmatively question the defendant about the plea agreement and satisfy itself that the defendant understands all promises and obligations in the agreement before the court accepts the defendant's guilty plea. *See* Fed. R. Crim. P. 11(c)(3). As Justice Souter explained, the plea "colloquy in accordance with Federal Rule of Criminal Procedure 11 laid the ground for satisfying the requirement that the error be obvious, by making a public record of the terms of the plea agreement between [the defendant] and the Government."[7] *Puckett*, 556 U.S. 144 (Souter, J., dissenting).

So here, for example, the plea agreement appears as an entry on the district court's case docket. *See* ECF No. 48. And at the February 18, 2020, change-of-plea hearing, of course, the district court reviewed the plea agreement with Malone in detail. When the district court asked the prosecutor whether he wanted to bring

---

[7] Though Justice Souter's statement appears in his dissent, it is not inconsistent with the majority opinion. Nor does the majority opinion reject that aspect of Justice Souter's dissent. Justice Souter dissented because he disagreed with the majority opinion's conclusion that, to determine any effect of a plain error on "substantial rights" under the third prong of plain-error review, we look to whether the breach affected the sentence. *Puckett*, 556 U.S. at 145 (Souter, J., dissenting). Instead, Justice Souter would have "identif[ied] the effect on substantial rights as the criminal conviction itself, regardless of length of incarceration." *Id.*

any provisions to the attention of the court, the prosecutor specifically mentioned the "two points for acceptance of responsibility." Not only that, but the PSR—which the district court said it reviewed here—expressly reminded the district court that "[t]he parties entered into a written plea agreement pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure." And as we have noted, Malone's sentencing memorandum also recalled that he had pled guilty under a plea agreement, and the government had agreed to recommend a three-point reduction for acceptance of responsibility and a sentence within the guidelines range. Finally, as we have noted, the district court itself mentioned the plea agreement at sentencing. Given the record, we cannot agree with the Dissent's suggestion that the government's breach was not before the district court. *See* Dissent at 16 n.14.

To be sure, it is the defendant's responsibility at sentencing to ensure that the district court holds the government to its promises in the plea agreement. But courts have long recognized the unique considerations involved when the government breaches a plea agreement. As the Fifth Circuit has recognized, "[V]iolations of the plea agreements on the part of the government . . . directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *Kirkland*, 851 F.3d at 505 (quoting *Swanberg*, 370 F.3d at 629 (6th Cir. 2004)).

And ultimately, the plea agreement is a part of the record and the in-court proceedings, and the district court knows about

the promises it contains. That said, of course, it is understandable that a district court may not have every promise the government has made at the forefront of its thoughts. That is why the plain-error standard—which is much harder to satisfy than the de novo standard that applies when the defendant preserves error—governs when the defendant has not preserved his claim of error in the district court. *See Puckett*, 556 U.S. at 135 ("In federal criminal cases, Rule 51(b) tells parties how to preserve claims of error: 'by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.' Failure to abide by this contemporaneous-objection rule ordinarily precludes the raising on appeal of the unpreserved claim of trial error.").

Plus, even the Dissent's unsupported reading of *Puckett* requires plain-error review of Malone's case. The Dissent says the district court in *Puckett* should have known a plea agreement was involved because "[t]he government would have only moved for an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if a defendant had pled guilty." *Id.* at 16 n.14.

Even assuming that's so, the record in Malone's case shows even more directly that the district court knew of the plea agreement. As the Dissent notes, during the sentencing itself, the district court mentioned the plea agreement. *See* Dissent at 13. To be sure, the parties did not expressly state at that time that the government had agreed to recommend acceptance of responsibility if

the defendant did not engage in disqualifying conduct between the dates he entered the plea agreement and sentencing. But if it's some type of indication at sentencing that a plea agreement is in play that governs, as the Dissent seems to suggest, there can be no doubt here that the district court was well aware of the existence of the plea agreement.

We also have found no authority for the proposition that a defendant's unpreserved claim that the government breached the plea agreement at sentencing is ever not cognizable on direct appeal and must instead be brought as a collateral attack. Tellingly, the Dissent has not identified one, either. And not one case it relies on to argue that collateral appeal is the answer involves an unpreserved claim that the government breached the plea agreement. In short, no authority we have located supports the Dissent's efforts to limit *Puckett* to unpreserved breach-of-plea-agreement claims when the procedural facts are the same as those in *Puckett*.

Next, we turn to the Dissent's second reason why it describes our analysis as "improper": the Dissent asserts our decision "is fundamentally premised on the idea that the Government can withhold evidence (like the investigator's testimony) from sentencing judges based on promises made in plea agreements." *Id.* at 38. Not so.

Contrary to the Dissent's contention, that's not what happened here. Rather, the government agreed not to object to Malone's acceptance-of-responsibility reduction based on conduct that occurred before Malone entered his guilty plea. As we have

reviewed, the government knew of the very conduct Malone allegedly engaged in post-arrest and pre-plea when it entered into the plea agreement. And that is the same conduct on which the government relied in opposing Malone's acceptance-of-responsibility reduction.

Nothing permitted—much less obligated—the government to lie to the district court if asked about Malone's post-arrest, pre-plea conduct. Rather, the government needed to explain to the district court that it knew of that conduct when it entered into the plea agreement, it agreed it would not object to a reduction for acceptance of responsibility based on that conduct, and it stood by that agreement.

Nor does anything in the plea agreement require the government to affirmatively recommend a reduction for acceptance of responsibility. *See* Dissent at 22. To the contrary, the government can object to such a reduction—as long as it does so based on Malone's post-plea conduct.

And if, before pleading guilty, a defendant commits violations of the law that the government does not know about until after it enters the plea agreement, the government has two ways to handle that. First, nothing prevents the government (the drafter of the agreement) from limiting its agreement not to oppose a reduction for acceptance of responsibility to those circumstances when it does not receive information that it was unaware of at the time of entering the plea agreement that the defendant engaged in uncharged criminal activity. In fact, just as the government could not

agree to assist a defendant in committing crimes, the government has an obligation to ensure that it does not purport to bind itself to engage in any unethical conduct in a plea agreement.

And second, when the drafting ship has already sailed (because the government conveyed it would not oppose an acceptance-of-responsibility reduction based on pre-plea conduct) and the government later learns of new pre-plea criminal activity by the defendant, its hands are not tied. At the sentencing, the government can acknowledge whatever its agreement was while arguing that the agreement does not cover criminal activity of which the government was not made aware at the time of the plea. That is a good-faith argument that the sentencing court can choose to accept or reject. As we have noted, the Supreme Court has recognized that "the scope of the Government's commitments [under a plea agreement] will on occasion be open to doubt." *Puckett*, 556 U.S. at 143.

Or if the plea agreement inarguably covers such criminal activity, the government achieves the correct balance between its duty of candor to the sentencing court and its duty to honor commitments under a plea agreement when "the government makes the necessary disclosures to the sentencing court, but nevertheless 'continue[s] to advocate for the acceptance of the agreement." *United States v. Edgell*, 914 F.3d 281, 288 (4th Cir. 2019) (quoting *United States v. Casillas*, 853 F.3d 215, 218 (5th Cir. 2017)). What the government cannot do, though, is act like the agreement doesn't exist and blatantly violate it, as it did here.

## VI.

Because plain error occurred when the government breached the plea agreement and the breach prejudiced Malone and seriously affected the integrity, fairness, and public reputation of the proceedings, we vacate Malone's sentence and remand for resentencing before a different judge.  At the new sentencing, the government must abide by its promises in the plea agreement and fulfill its duty of candor to the court.  Finally, to be clear, this opinion does not direct the guidelines range that the new sentencing judge must find.

**VACATED AND REMANDED.**

20-12744        TJOFLAT, J., DISSENTING                    1

TJOFLAT, Circuit Judge, Dissenting:

The Majority points to two purported errors in Malone's sentencing hearing below, one of which the Majority says satisfies plain error review under Fed. R. Crim. P. 52(b) and requires resentencing. The problem with the Majority's analysis is that neither of the errors the Majority identifies on appeal was committed by the District Court.[1] Absent a claim of district court error, plain error review cannot be conducted at all. On that ground, I respectfully dissent.

## I.

As the Majority correctly notes, Malone did not object or otherwise call to the District Court's attention the Government's alleged breach of the plea agreement. Normally, if an appellant raises on appeal an objection he failed to present to the district court, we review the district court's failure to notice the objection for plain error. *United States v. Romano*, 314 F.3d 1279, 1281 (11th Cir. 2002). As the Majority also properly explains, plain error analysis requires us to identify an error that was plain, which affected both the defendant's substantial rights and the fairness of the judicial proceeding. *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013). So far, so good.

---

[1] If anything, Malone's counsel is the one who committed colloquial "error" in not raising Government breach at sentencing. But we shouldn't penalize the District Court for the failures of Malone's counsel, which is exactly what the Majority's opinion today does.

20-12744      TJOFLAT, J., DISSENTING      2

After reciting the proper standard, the Majority launches into its determination that the Government breached badly enough to meet the standard for plain error. I cannot join in that analysis because my view—and that of this Circuit, as discussed below—is that any error which we review on appeal for plain error must be attributable to the district court rather than to a party to the litigation.

I begin with the language of 28 U.S.C. § 1291, the font of our jurisdiction in this case: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Plain and simple, we review decisions of district courts, not litigating positions of parties. *Id.*; *see also* 18 U.S.C. § 3742 (explaining that we review final sentences of district courts). And our cases back up my interpretation that plain error means an error in a final decision of a district court.[2] *See*

---

[2] The Majority seems to mischaracterize my view as being that an unobjected-to breach of a plea agreement can never be reviewed on appeal for plain error. If I held that view, I would be in contradiction of *Puckett v. United States*, 556 U.S. 129, 129 S. Ct. 1423 (2009). Fortunately, I don't hold that view. My view is simply that when reviewing government breaches of a plea agreement under the plain error standard, as we must do in Malone's case, we may only say that plain error exists as an initial matter when the government breach was plain to the district court. That's what happened in *Puckett. See supra* note 1; *see also Romano*, 314 F.3d at 1281; *United States v. Sosa*, 782 F.3d 630, 637 (11th Cir. 2015). Only when the breach should have been clear to the district court, that is an indication that the record is sufficiently developed for

*United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020) ("To prevail under plain error review, Iriele must show that *the district court* made an error." (emphasis added)); *United States v. Hernandez*, 906 F.3d 1367, 1370 (11th Cir. 2018) ("In order to establish plain error, a party must demonstrate: (1) the district court erred."); *United States v. Alberts*, 859 F.3d 979, 985 (11th Cir. 2017) ("Thus, we will not reverse Mr. Alberts's sentence as procedurally unreasonable unless he shows (1) the District Court erred."); *United States v. Puentes-Hurtado*, 794 F.3d 1278, 1287–88 (11th Cir. 2015) (analyzing defendant's claim that the government breached a plea agreement on plain error review and concluding that defendant could not show that the breach led the district court to commit

---

appellate review, and we are only dealing with a question of law that makes our review manageable.

The Majority points to cases where the government conceded breach of the plea agreement on appeal as evidence that plain error can occur, even when the error was not plain to the district court. *See, e.g., United States v. Kirkland*, 851 F.3d 499, 505 (5th Cir. 2017); *United States v. Dawson*, 587 F.3d 640, 648 (4th Cir. 2009); *United States v. Keller*, 665 F.3d 711 (6th Cir. 2011). Those cases were wrongly decided as plain error cases. In those erroneous cases, the courts of appeal acted like the defendant had directly appealed his sentence on the ground that the plea was involuntary under 28 U.S.C. § 2255. When the courts of appeal in effect treat a sentence appeal as a § 2255 motion, the government's concession of breach creates a pure question of law—whether the defendant's plea was rendered involuntary because of the government's breach of the plea agreement at sentencing. *See generally United States v. Taylor*, 77 F.3d 368 (11th Cir. 1996) (allowing the defendant under a 28 U.S.C. § 2255 collateral attack on appeal to withdraw a guilty plea where the government breached the plea agreement).

20-12744        TJOFLAT, J., DISSENTING                4

procedural error); *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014) (explaining that plain error review is only satisfied in the context of sentencing after revocation for violation of supervised release if the district court committed an error in sentencing).

We can only reverse if the District Court, as opposed to a party, erred below. The underlying question in this case, then, is whether the *District Court* erred in sentencing Malone. For the reasons below, it did not.

## II.

"Guideline sentencing is an *adversarial process*." *United States v. Scroggins*, 880 F.2d 1204, 1209 (11th Cir. 1989) (emphasis added). It is a confrontation between the government and the defendant. *Id*. In every criminal sentencing, the court's probation office prepares a presentence report ("PSR") laying out the facts of the case and "explain[ing] how the guidelines apply to those facts." *Id*. at 1209 n.11. Both the government and the defendant may object to any of the facts or guidelines applications the PSR presents. *Id*. The probation officer may then amend the PSR based on those objections and summarize any remaining objections in an addendum to the PSR. *Id*. The PSR "serves the purpose of a pretrial stipulation in a civil case." *Id*. The report's addendum sets out "the disputed factual and legal issues that the court must resolve at the sentencing hearing." *Id*.

After the probation officer completes the PSR, the district court conducts a sentencing hearing. The district court looks at the

20-12744        TJOFLAT, J., DISSENTING                5

circumstances surrounding "the defendant's offense conduct, the defendant's criminal history, and any other facts deemed relevant by the guidelines."[3]  *Id.* at 1209.  The district court completes a guidelines analysis of the defendant's offense level and criminal history category, which together produce a guideline sentencing range for that defendant.  *Id.* at 1210.  But the district court has an independent obligation to apply the 18 U.S.C. § 3553(a) factors to determine whether departure from the guideline sentencing range is appropriate.  18 U.S.C. § 3553(a).[4]

---

[3] The prosecutor also has a role in making sure that the relevant facts are before the district court.  *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *see infra* Parts V, VI.

[4] Neither the Sentencing Reform Act of 1984 nor the Sentencing Guidelines prescribes the burden of proof required to establish the facts applicable to the guidelines in a case.  We have held that "[w]hen a challenge to the veracity of the facts in a [presentence report] is brought by a defendant, the burden of proving those facts by a preponderance of the evidence lies with the government." *United States v. Rodriguez,* 34 F.4th 961, 969 (11th Cir. 2022) (citing *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995)); *see United States v. Roman*, 989 F.2d 1117, 1123 (11th Cir. 1993) (en banc) (Tjoflat, J., specially concurring) (explaining that labels like "prior conviction" serve as "a proxy for evidence of the *conduct* that gave rise to the conviction" (emphasis in original)); *infra* Part VI.  Specifically, the government has the burden of proof as to facts supporting a sentence because for the most part the government is the party possessing the evidence that supports a sentence.  However,

20-12744        TJOFLAT, J., DISSENTING                6

Because sentencing is an adversarial proceeding like a civil bench trial,[5] in addition to addressing the issues set out in the addendum to the PSR, we expect parties to object during the sentencing hearing when they disagree with the presentation of evidence or the district court's application of the guidelines, or believe that the adversary is breaching a provision of a plea agreement. *See Puckett v. United States*, 556 U.S. 129, 135, 129 S. Ct. 1423, 1429 (2009) ("Failure to abide by th[e] contemporaneous-objection rule ordinarily precludes the raising on appeal of the unpreserved claim of trial error . . . [and] [a]ny unwarranted extension of the authority granted by Rule 52(b) would disturb the careful balance it strikes between judicial efficiency and the redress of injustice." (internal quotation marks and citation omitted; alteration in original)); *cf. Sec. & Exch. Comm'n v. Diversified Corp. Consulting Grp.*, 378

---

the Sentencing Guidelines often place on the defendant the burden of proof regarding any issue as to which the defendant possesses the evidence. For example, the Sentencing Guidelines require the defendant to "clearly demonstrate[]" acceptance of responsibility under U.S.S.G. § 3E1.1(a) because the defendant is in control of the evidence regarding acceptance. *See* U.S.S.G. § 3E1.1(a) ("If the defendant clearly demonstrates acceptance of responsibility for his offence, decrease the offense level by 2 levels."); *United States v. Cruz*, 946 F.2d 122, 126 (11th Cir. 1991) (explaining that U.S.S.G. § 3E1.1(a) places the burden of proof on the defendant to show acceptance of responsibility).

[5] However, there are certain key differences between civil bench trials and sentencing hearings. One such difference is that the prosecutor cannot withhold evidence from the district court, unlike a plaintiff in a civil trial. *See infra* Parts V, VI.

F.3d 1219, 1227 (11th Cir. 2004) (explaining that in the civil context, parties must object to challenged testimony to preserve those issues for appeal).

Regarding plea agreements, the parties have the responsibility of telling the district court that a breach is occurring and requesting that the court intervene. When one party neglects its obligation to object to the other party's breach at sentencing, the district court commits error by not intervening only if the breach is so clear that despite the one party's "failure to object, the district court, *sua sponte*, should have" intervened. *See United States v. Pendergrass*, 995 F.3d 858, 878 (11th Cir. 2021); *Hesser v. United States*, 800 F.3d 1310, 1325 & n.21, 1329 (11th Cir. 2015) (determining that prosecutorial misconduct was not so egregious "that the District Court should have intervened *sua sponte* to remedy it"); *United States v. Johnson*, 980 F.3d 1364, 1378, 1385 (11th Cir. 2020) (explaining that it was not plain error for the district court to abstain from *sua sponte* requiring the government to move for an acceptance of responsibility adjustment under § 3E1.1(b), even where the government had no grounds to refuse to do so); *United States v. Smith*, 459 F.3d 1276, 1300–01 (11th Cir. 2006) (Tjoflat, J., specially concurring) (explaining that plain error incentivizes the district court to be vigilant or otherwise be reversed).

Usually, a district court would only be put on notice that it needs to intervene if some precedential case directly describes the potential error at play in the present case. *See United States v. Vereen*, 920 F.3d 1300, 1312 (11th Cir. 2019) ("When neither this

Court nor the Supreme Court ha[s] resolved an issue, there can be no plain error in regard to that issue."); *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020) ("An error is plain if it is clear or obvious, that is, if the explicit language of a statute or rule or precedent from the Supreme Court or this Court directly resolv[es] the issue." (quotation marks and citations omitted) (alteration in original)); *cf. United States v. Dean*, 487 F.3d 840, 852 (11th Cir. 2007) (explaining that it is not plain error when a district court simply follows our pattern jury instructions).

Because Malone did not object below, we ask whether any supposed breach of the parties' plea agreement by the Government was so clear that, despite Malone not objecting, the District Court should have *sua sponte* intervened. *See Pendergrass*, 995 F.3d at 878. Neither of the alleged breaches was clear enough to warrant the District Court's *sua sponte* intervention, so we cannot find that plain error occurred. After laying out what the Government promised in the plea agreement, I'll take each alleged breach in turn.

## III.

The Government explicitly promised Malone three things: (1) it would dismiss a count in the indictment; (2) it would recommend a sentence within the guideline sentencing range; and (3) if the District Court determined that Malone qualified for a two-point downward adjustment to his offense level under U.S.S.G.

20-12744        TJOFLAT, J., DISSENTING        9

§ 3E1.1(a),[6] the Government would move for a further one-point adjustment under U.S.S.G. § 3E1.1(b), so long as Malone did not "take any action inconsistent with the acceptance of responsibility" before the date of the sentencing hearing.[7] Further, as the Majority correctly notes, the Government also implicitly promised not to oppose a U.S.S.G. § 3E1.1(a) adjustment. Majority Op. at 16. But even here, the Government did not pigeonhole itself. The plea agreement provided that if the Government received information

---

[6] U.S.S.G. § 3E1.1(a) allows a district court to apply a two-point adjustment to the guideline offense level if the district court determines that the defendant accepted responsibility. U.S.S.G. § 3E1.1(a). This is an exercise of the district court's discretion. If the district court grants a § 3E1.1(a) adjustment, the government may move the court to grant a further one-point adjustment under § 3E1.1(b). U.S.S.G. § 3E1.1(b). If the district court grants a two-point adjustment under § 3E1.1(a) and the government moves for the further one-point adjustment under § 3E1.1(b), the district court *must* grant that further one-point adjustment under § 3E1.1(b). *Id.* However, the parties' plea agreement explicitly provided that "whether the defendant met the defendant's obligations to qualify for an adjustment pursuant to § 3E1.1(b) [wa]s at the sole discretion of the government."

[7] The plea agreement reads as follows: "The government further agrees, pursuant to Rule 11(c)(1)(B) [of the Federal Rules of Criminal Procedure], to recommend a sentence within the advisory Guidelines range as calculated by the Court at the sentencing." This tell us two things: (1) the Government realized—and acknowledged in the plea agreement—that the Court was going to do its own independent guideline sentencing range calculation, which it had no control over, and (2) the Government would recommend a sentence within the sentencing range, which it ultimately did, after the District Court made its determination on acceptance of responsibility. *See* 18 U.S.C. § 3553(b).

20-12744        T<small>JOFLAT</small>, J., D<small>ISSENTING</small>                    10

that Malone acted "inconsistent with the acceptance of responsibility" between "the date of the plea hearing and the date of the sentencing hearing," the Government "reserve[d] the right to oppose" Malone receiving a two-level downward adjustment under § 3E1.1(a).[8]  In the plea agreement, Malone acknowledged that he understood "that the Court [wa]s neither a party to nor bound by" the plea agreement and that "the Court w[ould] determine the advisory Guidelines range and sentence."[9]  And the Court ultimately did come to a guideline sentencing range—one that independently eliminated any adjustment for acceptance of responsibility.

───────────────

[8] Malone did act inconsistently with acceptance of responsibility after the signing of the plea agreement when he failed to accept responsibility in his interview with the probation officer.  *See infra* note 20.

[9] Malone would have been aware that the Government had an obligation under both *Lawrence* and *Rodriguez* to defend the facts as laid out in the PSR, so it makes sense that Malone's lawyer did not object at sentencing when the Government then did so. *Rodriguez,* 34 F.4th at 969; *Lawrence*, 47 F.3d at 1566. Malone understood this when he changed his not guilty plea to guilty and answered yes to this question by the Court:

> THE COURT: Do you understand that the Court will not be able to determine the advisory guidelines range for your case until after the presentence report has been completed and you and the government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer, and that the sentence ultimately imposed may be different from any estimate your attorney may have given you?

Following the roadmap from *Scroggins*, as part of the presentence investigation, the probation officer interviewed Malone. After concluding her investigation, she determined what she believed to be the appropriate sentencing range, 57 to 71 months imprisonment, based on the facts of the case and the applicable guidelines.[10] In her PSR, the probation officer declined to reduce Malone's offense level based on the acceptance of responsibility adjustment because, among other things, Malone had been untruthful in his interviews with her. She also noted that Malone continued his criminal activity after being indicted and while out on bail, such that she could not find that he accepted responsibility for the criminal conduct outlined in his guilty plea.

Malone objected to the probation officer's conclusion, stating that he had in fact accepted responsibility. The probation officer responded that Malone did not accept responsibility because he made excuses for his crimes in his interview and continued to engage in criminal conduct after the indictment. She noted Malone's objection in her addendum to the PSR.

Malone thereafter filed a motion for a downward variance. At the District Court's request, he then filed a separate

---

[10] In her PSR, the probation officer calculated the 57 to 71 months sentencing range based on a total offense level of 23 under U.S.S.G. § 2B1.1 and a criminal history category of III. As indicated *infra,* the District Court, after entertaining the parties' arguments, agreed that this was the appropriate sentencing range.

20-12744        TJOFLAT, J., DISSENTING                12

memorandum[11] renewing his acceptance of responsibility arguments. He argued for a one-level reduction of the criminal history category the probation officer calculated because the probation officer included in that calculation a misdemeanor conviction for reckless driving from 2007. [12] If the District Court agreed with Malone's arguments, the probation officer's calculated sentencing range—and thus the Government's sentence recommendation—would have been lowered. The Government, in response, filed a memorandum advocating for a 66-month sentence, which fell in

---

[11] The District Court ordered the parties to submit sentencing memoranda to frame the issues to be tried at sentencing:

> Sentencing memoranda are required. Each party must submit a sentencing memorandum not less than 5 working days before sentencing, with copies served on opposing counsel and the probation officer assigned to the case. The memorandum need not be complicated and may state the party's position about the appropriate sentence without elaboration.

So, both Malone and the Government were taking factual and legal positions in their sentencing memoranda. Malone's sentencing memorandum incorporated his motion for a variance and contained all his arguments supporting the acceptance of responsibility adjustment. In other words, the sentencing memoranda of both parties framed the issues to be tried at sentencing, that is, whether Malone deserved an acceptance of responsibility adjustment under § 3E1.1(a) that the probation officer thought he didn't deserve. Nowhere in that framing did Malone say that the Government had agreed not to oppose acceptance of responsibility unless Malone acted inconsistent with acceptance of responsibility between the plea agreement and sentencing.

[12] Malone did not reference the Government's obligation not to oppose acceptance of responsibility under the plea agreement in either his objections to the presentence report or his separate memorandum.

the middle of the sentencing guidelines range the probation officer recommended.

At sentencing, the District Court, aware of the parties' framing of the issues to be tried at sentencing, asked the Government to summarize the plea agreement. The Government explained that pursuant to the plea agreement, it had, among other things, "agreed to recommend a sentence within the guideline range as calculated by the Court at the hearing today." The Court then turned to Malone's counsel to ask if she agreed with the Government's representation of the plea agreement. She responded that she did and that she would only add "that the government agreed to recommend his discretionary third point for acceptance of responsibility should the Court deem that appropriate."

The District Court then asked if the parties planned to put on witnesses. The Government explained that, based on Malone's objections to the PSR, it had a witness who would testify about some of Malone's illegal pre-plea conduct if necessary. Malone's counsel did not object to that witness testifying, and she stated that she planned to call a clinical forensic psychologist to testify as an expert witness.

The District Court, aware of Malone's objections to the PSR and request for an acceptance of responsibility adjustment, then gave Malone's counsel an opportunity to argue why the acceptance of responsibility adjustment should be applied. Although Malone's counsel acknowledged the inconsistencies in Malone's answers to the probation officer's questions about his criminal activity, she

20-12744     TJOFLAT, J., DISSENTING     14

nevertheless argued that Malone had "expressed . . . many times in conversations with me that he did this and he's sorry for it. I think he's scared and regretful, and he accepts that he did this and he's sorry." In further support of her acceptance of responsibility argument and her motion for a downward variance, Malone's counsel then put on the forensic psychologist, who testified about the trauma Malone had experienced throughout his life and his mental health struggles.

Next, the Government argued that Malone should not receive an acceptance of responsibility adjustment because he had committed criminal activity after indictment but before entering into a plea agreement. The Government then asked whether the District Court would like to hear testimony from a police officer involved in the investigation of such criminal activity. The Court asked to hear from the officer, after which the Government, Malone, and the Court each questioned the officer.[13]

After hearing from both witnesses, the District Court denied the acceptance of responsibility adjustment to Malone's offense

---

[13] Malone's counsel did not object during the Government witness's testimony. After the witness had finished testifying, the District Court asked Malone's counsel if she had any concerns, and she explained that she felt at a "bit of a disadvantage" defending against statements the witness made about other pending criminal matters against Malone. The Court said it understood her "objection." She made no further objection as to the Government witness (even though that witness testified about Malone's conduct before entering into a plea agreement).

level because Malone had been charged with multiple schemes of the same conduct and had been untruthful in his PSR. The parties then argued about whether Malone should have received a lower criminal history category than the one assigned by the probation officer because one of the convictions included in that calculation was a misdemeanor conviction from 2007 for reckless driving. After Malone's counsel asked for a 36-month sentence, 21 months below even the low end of the PSR's recommended range of 57–71 months, the Government advocated for a sentence of 66 months, a sentence within the sentencing range—the kind of sentence it agreed to recommend in the plea agreement. The Government followed up by saying, "Quite honestly, I don't think it's enough. If I had my way about it, it probably would be double or triple that . . . But . . . we recommend the 66-month, middle-of-the-guideline sentence."

Once Malone gave his allocution, the District Court denied his motion for a lower criminal history category and imposed a 71-month sentence, the highest sentence within the guideline sentencing range. The Court then asked if the parties had any objections, and Malone's counsel renewed the objections to the acceptance of responsibility denial and the refusal to lower the criminal history category because of the reckless driving offense. The Court overruled those objections. Malone timely appealed.

## IV.

Reframing Malone's arguments based on the correct standard for plain error—whether the District Court committed an error

20-12744      TJOFLAT, J., DISSENTING                16

that was plain, which affected both the defendant's substantial rights and the fairness of the proceeding—we must first ask whether the Court erred *at all*.[14] *See Vandergrift*, 754 F.3d at 1307. It did not.  The Court based its sentence on the PSR's presentation,

---

[14] The Majority seems to take issue with this framing of the plain error standard—that the District Court must have been the one to err—as inconsistent with the reasoning in *Puckett*.  But *Puckett* supports rather than undermines my position.  In that case, the district court was aware of both the government's original motion in support of a full three-point adjustment for acceptance of responsibility under both U.S.S.G. § 3E1.1(a) and § 3E1.1(b), as well as the government's later change in position, where it opposed acceptance of responsibility at sentencing.  *Puckett*, 556 U.S. at 132, 129 S. Ct. at 1427.  The government would have only moved for an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if a defendant had pled guilty. Furthermore, the government would have only moved for a further adjustment under U.S.S.G. § 3E1.1(b) if the defendant had "assisted authorities in the investigation or prosecution of his own misconduct." U.S.S.G. § 3E1.1(b).  And the district court would have understood that the government only made those motions due to a plea agreement.  So, when the government withdrew these motions, the district court would have been alerted that the government was changing its position and would have known it needed to step in to figure out whether the government was going back on its word. Unlike the instant case, in *Puckett* there was a district court error at sentencing because the government's breach was clearly before the district court.  The Supreme Court reviewed as much, ultimately determining that the defendant could not meet the heavy burden of showing enough of an effect on his substantial rights such as to meet the standard for plain error.  *See Puckett*, 556 U.S. at 134, 129 S. Ct. at 1428 (explaining that the policy of plain error review must be balanced against the policy of the contemporaneous objection rule, which puts disputes before the district court, "ordinarily in the best position to determine the relevant facts and adjudicate the dispute").

the evidence adduced at the sentencing hearing, the parties' arguments, and its own evaluation of Malone's conduct under the 18 U.S.C. § 3553(a) factors, all in accordance with how *Scroggins* directs district courts to conduct sentencing. Malone asked for a ruling based on his motions, in light of both his own arguments and those of the Government, and that is what he got.

After sentencing Malone, the District Court asked the parties: "are there any objections to the manner in which I've pronounced [sentence]?" The Government had no objections. But defense counsel did, stating: "I make a procedural and substantive objection to Mr. Malone's denial of acceptance of responsibility and denial of downward departure. And I'll stand on the record."

Malone does not appeal his sentence on those two grounds. In the plea agreement, he waived his right to do so. Rather, he appeals his sentence on the ground that the Government breached the plea agreement,[15] a ground he did not present to the trial

---

[15] As Malone correctly states in his brief:

> It is black-letter law . . . that "an appeal waiver does not bar a defendant's claim that the government breached the plea agreement." *United States v. Hunter*, 835 F.3d 1320, 1324 (11th Cir. 2016). Here, each of Malone's appellate issues alleges such a breach, and therefore the appellate waiver offers no barrier to this Court's consideration of Malone's appeal on the merits. *See id.*

In *Hunter,* the defendant "preserved his objection to the purported breach of the plea agreement in the district court" by objecting to the Government's

20-12744    TJOFLAT, J., DISSENTING    18

judge. In doing so, Malone effectively concedes that his sentence is unassailable based on trial judge error. Malone's ground for appeal was not so clear in the record as to require the District Court to notice it and intervene *sua sponte*.[16] In appealing the Government's breach of the plea agreement, he is mounting a collateral attack on his sentence—bringing in effect an independent cause of action to set aside his sentence—based on evidence not presented to the trial judge at sentencing.

On occasion, we are asked to notice on direct appeal the merits of a collateral attack on the defendant's conviction or sentence, an attack in the form of a constitutional claim based on evidence not presented to the trial judge.[17] For example, a defendant

---

failure to recommend an acceptance of responsibility adjustment as the plea agreement required. *Id.* We found merit in the objection; the district court's error in failing to sustain the objection was patently established in the record. We therefore vacated Hunter's sentence and remanded the case for resentencing. *Id.* at 1331.

[16] Malone's attack on his sentence is unlike the one the defendant made in *Hunter.* Whereas Malone must rely on evidence not presented to the District Court to establish the Government's breach of the plea agreement, the defendant in *Hunter* relied on evidence before the court when he contended that the government was in the process of breaching the plea agreement. *See Hunter,* 835 F.3d at 1324.

[17] Malone's opening brief in this appeal mentions neither the Due Process Clause of the Fifth Amendment, nor the words "due process." Malone does not argue that the Government's plea agreement breaches deprived him of due process of law to the point of rendering his plea involuntary. The closest

argues that his conviction should be set aside because his trial lawyer rendered ineffective assistance of counsel under *Strickland v. Washington* or the Government withheld evidence favorable to the defense in violation of *Brady v. Maryland* or *Giglio v. United States. See Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052 (1984) (setting forth the ineffective assistance of counsel standard under the Sixth Amendment); *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963) (explaining that prosecutors violate the Due Process Clause when they withhold exculpatory or mitigating evidence); *Giglio v. United States,* 405 U.S. 150, 92 S. Ct. 763 (1972) (same).

Consider a *Strickland* violation. To decide the claim, an evidentiary hearing must normally be held to determine whether the trial lawyer performed as a competent attorney would have under

---

he comes to saying that is to argue that the Government's alleged breaches constituted "plain error" and thus rendered his sentencing hearing unfair. He could not mount that argument in support of a motion to correct sentence under 28 U.S.C. § 2255 without alleging that his guilty plea was obtained in violation of the Constitution or laws of the United States. Section 2255 provides in pertinent part that:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Without an alleged violation of "the Constitution or laws of the United States," a collateral attack under § 2255 must fail.

20-12744        TJOFLAT, J., DISSENTING                20

the circumstances.[18]  To decide a *Brady* or *Giglio* claim, an eviden-
tiary hearing must normally be held to determine whether the
withheld evidence was favorable to the defense and, if so, whether
defense counsel was unaware of the evidence.  As an appellate
court, we lack the statutory authority to conduct the evidentiary
hearing while entertaining the defendant's direct appeal of his con-
viction (or sentence), so we would not entertain such claims.  Ra-
ther, we would inform the defendant that the vehicle federal law
designates for litigating his constitutional claim is a motion to cor-
rect sentence filed in the trial court pursuant to 28 U.S.C. § 2255.[19]

---

[18] We routinely hold that a collateral attack under 28 U.S.C. § 2255 is the ap-
propriate vehicle for addressing counsel's performance because a full record
must be developed to determine whether counsel was acting reasonably un-
der *Strickland*.  *See United States v. Puentes-Hurtado*, 794 F.3d 1278, 1285
(11th Cir. 2015) (explaining that we generally do not evaluate *Strickland* claims
for ineffective assistance of counsel on direct appeal but rather on habeas un-
der § 2255 because of the factual discovery involved).  In a rare case, when *all*
the evidence needed to decide the collateral claim is in the trial court record
*and* we can determine as a matter of law whether the collateral claim has
merit, we might decide the claim.  *See United States v. Bender*, 290 F.3d 1279,
1284 (11th Cir. 2002) ("We will not generally consider claims of ineffective
assistance of counsel raised on direct appeal where the district court did not
entertain the claim nor develop a factual record.  If the record is sufficiently
developed, however, this court will consider an ineffective assistance of coun-
sel claim on direct appeal." (citations omitted)).  This, obviously, is not such a
case as the following discussion makes clear.

[19] The jurisdiction to entertain the § 2255 motion lies in "the court which
imposed the sentence."  28 U.S.C.§ 2255.

In the following part, I explain why we are unable to decide Malone's breach of plea agreement claims in this appeal as a matter of law and why, due to critical unresolved issues of fact, the District Court is the proper forum for deciding the claims. Malone contends that the Government breached the plea agreement in two ways. I consider the alleged breaches in order.

## A.

Malone's first claim is that the Government breached the plea agreement when it opposed an acceptance of responsibility adjustment to his offense level under U.S.S.G. § 3E1.1(a) based in part on his pre-plea conduct. The plea agreement contains the following provisions relating to acceptance of responsibility:

> [T]he government reserves the right to oppose the defendant's receiving a two-level reduction pursuant to § 3E1.1(a) should the government receive information indicating that, between the date of the plea hearing and the date of the sentencing hearing, the defendant, either personally or through the actions of the defense attorney on behalf of the defendant, has acted inconsistent with the acceptance of responsibility.

> . . .

> The defendant also promises to refrain from taking any action inconsistent with the defendant's acceptance of responsibility for the offense to which the defendant is pleading guilty.

20-12744        Tjoflat, J., Dissenting                22

. . .

> The defendant agrees to provide truthful information to Probation and to the Court in all presentence and sentencing proceedings.

A reasonable interpretation of these provisions, taken together, is that following his execution of the plea agreement and change of plea to guilty, Malone would be interviewed by one of the District Court's probation officers and questioned about the conduct for which he had pled guilty. Malone met with a probation officer as required. The probation officer was aware of the parties' plea agreement and the Government's obligation to, in her words, "recommend a sentence within the advisory guidelines range, and recommend a reduction [of the offense level] for acceptance of responsibility if deemed appropriate." Part of the probation officer's questioning would therefore focus on whether Malone accepted responsibility for his criminal conduct under § 3E1.1(a).

Based on his responses to her questions, the probation officer found that Malone had not accepted responsibility for his criminal conduct. She articulated the reasons for her finding in the PSR she submitted to the parties for their review.[20]

---

[20] The probation officer summarized her interview with Malone in paragraphs 19 through 24 of her presentence report. She expressed her finding that

20-12744        TJOFLAT, J., DISSENTING        23

Malone objected to the probation officer's finding that he failed to satisfy § 3E1.1(a)'s requirements. The probation officer considered his objection but adhered to her finding, as she indicated in her addendum to the PSR. Under *Scoggins,* the addendum framed the issues the District Court would have to resolve at the sentencing hearing. Malone would have the burden of proving to the Court by a preponderance of the evidence that he was entitled to the acceptance of responsibility adjustment. *United States v. Cruz*, 946 F.2d 122, 126 (11th Cir. 1991).

The parties litigated the acceptance of responsibility issue at the sentencing hearing. Malone claims on appeal that the Government breached the plea agreement by defending the probation officer's finding on the issue and by resisting his attempt during the sentencing hearing to convince the District Court that he

---

Malone failed to accept responsibility for the criminal conduct of which he was convicted:

> [H]e partially admitted involvement in these offenses. . . . The defendant denied any intent to cause harm and did not believe his actions would lead to prosecution and incarceration. . . . Although the defendant acknowledged his actions and admitted that he conducted his business in a similar manner for some time, the defendant does not appear to accept responsibility for his actions. . . . Further, while on pretrial release, the defendant continued similar conduct. . . . It is the position of the U.S. Probation Officer that Malone is not fully accepting responsibility and is not eligible for the reduction in his offense level associated with the same.

20-12744        TJOFLAT, J., DISSENTING                    24

was entitled to the adjustment.  Malone's attorney did not object to the Government's behavior on the ground that the plea agreement precluded it.  Why not?

There are two possible explanations.  Neither is disclosed by the transcript of the sentencing hearing.  One explanation is that Malone's attorney made a strategic decision not to raise the Government's breach to achieve some goal.  For example, perhaps Malone's attorney thought at the time that this was a minor issue not worth disrupting the proceedings over.  Or perhaps Malone's attorney noticed the breach and decided not to raise it so that she could sandbag the Government on appeal and receive a new sentencing hearing in front of a more favorable judge.  Without a factual record, we have no idea what Malone's attorney thought (or didn't think).

The other explanation is that Malone's attorney's conduct constituted ineffective assistance of counsel under *Strickland*.  Perhaps Malone's attorney simply did not notice the Government's potential breach.  Or perhaps Malone's attorney thought the Government's conduct was allowed under the plea agreement—after all, Malone's attorney did not seem surprised that the Government had prepared a witness.  Malone's attorney may well have known ahead of time what the Government would do and thought nothing of it, effectively inviting any "error."

Either way, a collateral proceeding was necessary to develop a complete factual record as to why Malone's attorney did not object.  By deciding this case based on a fundamentally misguided

view of "plain error" review, the Majority implicitly (and improperly) concludes that "counsel's conduct so undermined the proper functioning of the adversarial process that the [sentencing hearing] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064. Malone's attorney's conduct, viewed under *Strickland*'s lens, is obviously the foundation for the Majority's decision on Malone's first claim, not plain error (because, again, the District Court made no error). And we may not review a *Strickland* claim on direct appeal without a complete evidentiary record and trial court findings of fact. *See United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).

## B.

Malone's second claim is that the Government breached the plea agreement by only nominally arguing for a sentence within the guideline sentencing range while saying that it would give double or triple that sentence if it had its way. The question is whether the Government's commentary after arguing for a sentence of 66 months imprisonment—which was within the guideline range—was so egregious as to amount to a breach of the plea agreement.

When the Government made the disputed statement, it was responding to the fact that Malone's attorney was requesting a sentence of 36 months, 21 months below the lowest end of the

20-12744      TJOFLAT, J., DISSENTING      26

guideline sentencing range.[21]  *See United States v. Young*, 470 U.S. 1, 12, 105 S. Ct. 1038, 1044 (1985) (explaining that in the context of a jury trial the Government's response and behavior should be considered in the context of the defendant's arguments and remarks). The Government considered this request outlandish.  Malone's attorney no doubt anticipated its response. An objection that the Government was breaching its obligation to recommend a sentence within the guideline sentencing range would likely have seemed preposterous given Malone's criminal history and his failure to accept responsibility for his criminal behavior.  Is that why Malone's attorney did not object?  Or was it because she was incompetent under *Strickland*?  Although the Majority holds that the Government's "plain error" did not affect Malone's substantial rights with respect to the sentencing recommendation, I am still left to wonder what the Majority's answer to these questions would be since the Majority did indeed find an error that it deemed plain.

In ultimately vacating Malone's sentence based on the alleged acceptance of responsibility breach, the Majority must have found counsel's failure to object unreasonable under *Strickland*. Putting that notion aside, the Majority must acknowledge that on a record that does not tell us why Malone's counsel acted as she

---

[21] If I were assessing whether the District Court committed plain error for not intervening and striking the Government's puffery, I would be unable to say that a precedential case required the Court to intervene.  *See Vereen*, 920 F.3d at 1312.  So, again, there was no *court* error here.

20-12744        Tjoflat, J., Dissenting                27

did, we are powerless to decide Malone's claim that the Government breached the plea agreement. The Majority errs by so deciding.

## V.

On the merits, the Government may have breached the plea agreement by explicitly opposing a § 3E1.1(a) adjustment.[22] If Malone had properly objected to the Government's opposition at sentencing, this would be an entirely different case and my position would depend on what the parties and the District Court did in response to Malone's objection.[23] *See Santobello v. New York*, 404 U.S. 257, 262–63, 92 S. Ct. 495, 499 (1971). However, because of the Government's affirmative disclosure obligations under 18 U.S.C. § 3661, the Government would still have made its witness available and reminded the Court of Malone's pre-plea criminal

---

[22] If the Government was obligated not to oppose a § 3E1.1(a) adjustment at sentencing, the Government should have made its position (or lack thereof) clear to the probation officer because this could have theoretically influenced the probation officer's decision not to recommend a § 3E1.1(a) adjustment. At the very least, this would have allowed the probation officer to note the Government's non-opposition to the § 3E1.1(a) adjustment in the PSR's addendum. *Scroggins*, 880 F.2d at 1209 n.11.

[23] For example, if Malone had objected, the Government could have pointed to Malone's post-plea interview with the probation officer as conduct inconsistent with the acceptance of responsibility. *See supra* note 20. If, after hearing from the parties, the District Court agreed, the Government would have been freed from its promise not to oppose a § 3E1.1(a) adjustment and could have opposed the § 3E1.1(a) adjustment based on Malone's pre-plea criminal activity.

activity even if the Government was obligated under the plea agreement not to oppose a § 3E1.1(a) adjustment. Assuming for the sake of the argument that plain error review could somehow apply in a case without court error (a proposition with which I *strongly* disagree), Malone could not have been substantially prejudiced by the Government's opposition.

At the sentencing hearing, the Government took three actions relevant to the § 3E1.1(a) adjustment. First, immediately following Dr. Boyer's testimony and Malone's argument, the Government stated its opposition to a § 3E1.1(a) adjustment and briefly summarized Malone's pre-plea criminal activity. The Government then stated that it was "prepared to put [on] some testimony from an investigator who has some knowledge of that investigation [in] the first part of this year *if the Court desires to hear that to make his decision.*" The District Court asked to hear the investigator's testimony, so the Government, Malone, and the Court all questioned the investigator. Finally, following the investigator's testimony and a brief argument from Malone, the Government quickly reiterated its opposition to a § 3E1.1(a) adjustment and compared the pre-plea criminal activity on which the investigator testified to the crimes Malone pled guilty to. The Court then denied the § 3E1.1(a) adjustment "[b]ased on everything [it] read in the PSR, the arguments of counsel, [and] the testimony here today."

20-12744        TJOFLAT, J., DISSENTING            29

Under 18 U.S.C. § 3661,[24] government attorneys are obligated to ensure the district court has "complete and accurate information concerning the defendant" at sentencing regardless of any promises it may have made in the plea agreement.[25] *United States v. Block*, 660 F.2d 1086, 1091 & n.7 (5th Cir. Unit B 1981).[26] More specifically, the government must (1) introduce any "relevant factual information" that the district court may lack and (2) correct any "mistaken premises" the court may be "laboring under." *Id.*

That is exactly what the Government did here. First, the Government did not introduce the investigator's testimony on its own—it was merely "prepared to put [on] some testimony from an investigator who ha[d] some knowledge of th[e] investigation" should the Court require it. In other words, the Government prepared evidence that the District Court may have considered necessary to achieve the goals of the 18 U.S.C. § 3553(a) sentencing factors and then left the final decision to the Court. The Court, on its own, decided that the investigator's testimony was necessary, so

---

[24] *Block* refers to 18 U.S.C. § 3577, the previous designation for § 3661. 660 F.2d at 1091 n.7; Pub. L. No. 98-473, Title II, § 212(a)(1), 98 Stat. 1837, 1987 (1984) (renumbering the section). The text of § 3661 has never been amended. Pub. L. 91-452, Title X, § 1001(a), 84 Stat. 922, 951 (1970) (enacting the statute now codified at § 3661).

[25] As I explain in Part VI, plea agreement promises that violate the Government's § 3661 disclosure obligations are unenforceable and, when these promises induce a defendant to plead guilty, render the plea involuntary.

[26] Decisions by Unit B panels of the Former Fifth Circuit are binding on the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

20-12744      TJOFLAT, J., DISSENTING                    30

the Government inarguably had an obligation to the Court under § 3661 to introduce the testimony.[27] Because the Government had to introduce the investigator's testimony anyway, its introduction could not have substantially prejudiced Malone.

Likewise, the Government's two short recitations of Malone's pre-plea criminal activity could not have substantially prejudiced Malone because (1) that information was all contained in the PSR and the necessary witness testimony and (2) the Government was obligated under § 3661 to correct any "mistaken premises" that may have resulted from the testimony of Dr. Boyer and Malone's arguments concerning acceptance of responsibility. While the Government may have exceeded its duty to correct the record when it compared Malone's pre-plea criminal activity to the crimes Malone pled guilty to, this argument merely stated the obvious. So, by bringing up information that was already in the PSR to correct any possible "mistaken premises" the District Court may have had, the Government did not substantially prejudice Malone's argument for a § 3E1.1(a) adjustment. Any other conclusion would suppose the Court somehow forgot or missed Malone's pre-plea criminal activity—an incredulous proposition (and one that would trigger the Government's § 3661 duties).

---

[27] Because Malone raised § 3E1.1(a) as an issue for the District Court to decide through his objection to the PSR, the Government also had an obligation under the *Scroggins* adversarial model to confront Malone's factual assertions. 880 F.2d at 1209, 1211 n.18.

That leaves only the Government's explicit opposition to a § 3E1.1(a) adjustment as potentially prejudicial. Had Malone objected to the Government's opposition, this Court might have been required to vacate Malone's sentence depending on how the objection played out in the District Court. *Santobello*, 404 U.S. at 262–63, 92 S. Ct. at 499. But as the Supreme Court explained in *Puckett*, "[w]hether an error can be found harmless is simply a different question from whether it can be subjected to plain-error review." 556 U.S. at 139, 129 S. Ct. at 1431. Accordingly,

> The defendant whose plea agreement has been broken by the Government will not always be able to show prejudice, either because he obtained the benefits contemplated by the deal anyway (*e.g.*, the sentence the prosecutor promised to request) or because he likely would not have obtained those benefits in any event (as is seemingly the case here).

*Id.* at 141–42, 129 S. Ct. at 1432–33. Here, the District Court based its decision on the PSR, which the Government's opposition did not change; the investigator's testimony, which both § 3661 and the Court's request required; and the Government's argument—obvious to anyone who read the PSR—that Malone did not accept responsibility because he continued to engage in the same criminal activity after pleading guilty. The Court did not base its decision on the Government's opposition to a § 3E1.1(a) adjustment, so Malone would not have received a § 3E1.1(a) adjustment even if the Government had not opposed the adjustment. Accordingly, even if this Court could somehow review party error under plain

error review, Malone was not substantially prejudiced by the Government's breach.

## VI.

My substantial prejudice analysis rests on a simple proposition: that the government has an affirmative, non-waivable obligation to ensure the district court at sentencing has a correct understanding of all information relevant to imposing a fair and just sentence under the guidelines and the § 3553(a) sentencing factors. *Block*, 660 F.2d at 1091–92. In other words, the government cannot promise to stand silent at sentencing or withhold evidence from the court. *Contra* Majority Op. at 18 (holding the Government breached its plea agreement by opposing an acceptance-of-responsibility adjustment based on conduct discussed in the investigator's testimony). Any plea agreement that induces a defendant to plead guilty with *ultra vires* promises that contradict or lessen this obligation is likely to be involuntary because the government cannot keep its obligation. *Smith v. United States*, 670 F.2d 145, 148 n.6 (11th Cir. 1982) ("Where an accused has entered a guilty plea with the understanding that the government can and will fulfill such a promise, the failure to afford relief for the government's breach would violate the Constitution, both because the plea is involuntary thus violating the defendant's fifth amendment privilege against self-incrimination, and because the government's misrepresentation has caused the defendant to relinquish his sixth amendment rights to a jury trial and its various incidents." (internal citation omitted); *see also Palermo v. Warden, Green Haven State*

*Prison*, 545 F.2d 286, 289 (2d Cir. 1976) ("We believe that the reasoning underlying *Santobello* applies no less when the prosecutor makes unfulfillable promises in negotiating a plea. Most importantly, the voluntariness of a plea induced by unfulfillable promises is, of course, open to grave doubt."). My view is based on both the text of § 3661 and the intent behind the modern sentencing system.

Section 3661 states: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Section 3661 thereby "codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151, 117 S. Ct. 633, 635 (1997); *see United States v. Booker*, 543 U.S. 220, 251, 125 S. Ct. 738, 760 (2005) (Breyer, J., Opinion of the Court in part) (describing § 3661 as "recodifying" the law that existed before sentencing reform). Under that longstanding principle, "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Watts*, 519 U.S. at 151–52, 117 S. Ct. at 635 (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083 (1949)). And a plea agreement where the government promises, either explicitly

20-12744      Tjoflat, J., Dissenting      34

or implicitly,[28] to withhold evidence from the sentencing judge effectively places a limitation on the information that judge receives. *Block*, 660 F.2d at 1091 n.7 ("Federal courts are required to consider all information concerning a defendant's background, character and conduct when imposing a sentence. 18 U.S.C.A. [§ 3661]. Accordingly, the prosecutor, as an officer of the court, has a duty to assist the court in effectuating this statutory requirement."). As *Block* put it,

> [T]he Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court. Such an agreement not only violates a prosecutor's duty to the court[29] but would result in sentences based upon incomplete facts or factual inaccuracies, a notion that is simply abhorrent to our legal system.

660 F.2d at 1092. "[S]imply abhorrent to our legal system" is right. *Id.* Such a view stands in direct contradiction to the modern view

---

[28] I do not read Malone's plea agreement as preventing the Government from introducing any evidence whatsoever. The Majority, however, does read Malone's plea agreement that way. Majority Op. at 17–18. So, for the purposes of this section, I assume Malone's plea agreement says so as well.

[29] I note that this duty derives not just from § 3661 but also from the general duty of candor to the tribunal that applies to all lawyers. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("Every lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal.").

of sentencing, as adopted in the Sentencing Reform Act of 1984, that sentences should be based on the defendant's "real conduct." *Booker*, 543 U.S. at 254, 125 S. Ct. at 761.

As Justice Breyer, writing for the Court, explained in *Booker*, "Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity." *Id.* at 253, 125 S. Ct. at 761 (citing 28 U.S.C. § 991(b)(1)(B)). Thus, "Congress' basic statutory goal—a system that diminishes sentencing disparity—depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction." *Id.* at 250, 125 S. Ct. at 759 (emphasis in original); *see also United States v. Roman*, 989 F.2d 1117, 1123 (11th Cir. 1993) (en banc) (Tjoflat, J., specially concurring) (explaining that labels like "prior conviction" serve as "a proxy for evidence of the *conduct* that gave rise to the conviction" (emphasis in original)). This "real conduct" approach to sentencing preceded the Sentencing Reform Act, so by "specifically insert[ing § 3661] into the Act" through recodification, Congress demonstrated that it "expected this system to continue." *Booker*, 543 U.S. at 251, 125 S. Ct. at 760.

However, judicial efforts to sentence based upon real conduct cannot succeed if the government can promise to withhold information from the courts in plea agreements. After all, our judicial system is adversarial, not inquisitorial, so courts are dependent upon government investigations for most facts relevant at sentencing. Allowing the government to promise to withhold

information about real conduct "would thereby undermine the sentencing statute's basic aim of ensuring similar sentences for those who have committed similar crimes in similar ways." *Id.* at 252, 125 S. Ct. at 760.  If I may borrow an example from Justice Breyer, imagine two defendants,

> Smith and Jones, each of whom violates the Hobbs Act in very different ways.  Smith threatens to injure a co-worker unless the co-worker advances him a few dollars from the interstate company's till; Jones, after similarly threatening the co-worker, causes far more harm by seeking far more money, by making certain that the co-worker's family is aware of the threat, by arranging for deliveries of dead animals to the co-worker's home to show he is serious, and so forth.  The offenders' behavior is very different; the known consequences of their actions are different; their punishments both before, and after, the Guidelines would have been different.

*Id.* at 252, 125 S. Ct. at 760–61 (citation omitted).  Justice Breyer used this example to reject the *Booker* dissenters' view that the correct remedial approach would have been to allow district judges to impose sentences based only upon the facts alleged in the indictment and proved beyond a reasonable doubt to a jury.  *Id.* at 252–

53, 125 S. Ct. at 761.[30]  Under the *Booker* dissenters' approach, "unless prosecutors decided to charge more than the elements of the crime, the judge would have to impose similar punishments" on the two imagined defendants despite their real conduct being very different.  *Id.*  So, while the *Booker* dissenters' approach would have prioritized at sentencing what the Government alleged in the indictment over the real conduct of the defendant, the Court rejected that approach as contradictory to Congress's intent.

Justice Breyer's example applies just as much here.  Imagine if Smith and Jones both made plea agreements with the government, and in Jones's plea agreement the government promised to withhold from the probation officer and the district court all information besides the facts sufficient to support the guilty plea.  Without the government informing the probation officer or the court about Jones's far more dangerous behavior—his desire for more money, his contact with the victim's family, and his delivery of the dead animals to the victim's home—the court would have no idea that Jones had done any of this and would likely sentence Jones in a similar fashion as it sentenced Smith.  And just as the *Booker* dissenters' approach contradicted Congress's intent in the Sentencing Reform Act's real conduct model, so too would this approach.

---

[30] While Justice Breyer cites to Justice Scalia's dissent, *Booker*, 543 U.S. at 253, 125 S. Ct. at 761, the *Booker* dissenters' approach is more clearly laid out in Justice Stevens's dissent, which Justice Scalia joined in relevant part.  *Id.* at 284–85, 125 S. Ct. at 778 (Stevens, J., dissenting in part).

I recognize that the Majority's opinion today does not extend as far as my modified example.  *See* Majority Op. at 39 ("At the new sentencing, the government must abide by its promises in the plea agreement and fulfill its duty of candor to the court.").  But the Majority's logic is fundamentally premised on the idea that the government can withhold evidence (like the investigator's testimony) from sentencing judges based on promises made in plea agreements.  And, even worse, we have precedent in this Circuit that does extend as far as my modified Smith and Jones example.

In *United States v. Boatner*, a pre-sentencing guidelines case, a panel of this Court outright stated that "the government can enter into a binding agreement with a defendant to restrict the facts upon which the substantive offense is based" for sentencing purposes.  966 F.2d 1575, 1578 (11th Cir. 1992) (citing *United States v. Nelson*, 837 F.2d 1519, 1522–25 (11th Cir. 1988)).  In *Boatner*, the defendant pled guilty to distributing less than 500 grams of cocaine under 21 U.S.C. § 841(a)(1) in exchange for a government stipulation "that two ounces of cocaine would be the only quantity considered for sentencing purposes."  *Id.* at 1577–78.  But, as the government later learned from other outside sources, Boatner had actually possessed approximately three kilograms of cocaine—over 52 times the stipulated amount.  *Id.* at 1578.  The government provided these sources to the probation officer, who put both the outside sources and the information in the PSR.  *Id.*  When Boatner objected to the PSR's three-kilogram amount at the sentencing hearing, the government revealed its outside sources (other

20-12744        TJOFLAT, J., DISSENTING                    39

cooperating witnesses), explained that the probation officer "ha[d] done his duty in putting those [outside sources] into the report," and concluded by stating that it would "stick to its stipulation" of two ounces. *Id.* at 1577. In other words, the government acted in accordance with both its stipulation in the plea agreement and its obligations under § 3661 and *Block*.

This, however, was not enough for the *Boatner* panel. Instead, the *Boatner* panel held that "the government may not include information in the presentence investigation report that contradicts the plea agreement stipulation limiting the amount of cocaine possessed by Boatner to two ounces." *Id.* at 1579. The *Boatner* panel sidestepped the provision of the plea agreement stating that the agreement was "not binding on the Court," by holding that the plea agreement bound the government.[31] *Id.* at 1578–79. So, the *Boatner* panel vacated Boatner's sentence and remanded for resentencing before a different district judge with an instruction that "the presentence report refer only to two ounces of cocaine as stipulated." *Id.* at 1580.

Now, in fairness to my colleagues who sat on the *Boatner* panel, it does not appear from the opinion that the government argued or even cited § 3661 as interpreted by the former Fifth Circuit in *Block*. *See generally id.* at 1578–82. Had the government done so, the *Boatner* opinion may well have turned out very

---

[31] Never mind that forcing the government to exclude relevant facts would, in effect, bind the district court's factual determinations.

differently. And, of course, because *Block* precedes and directly contradicts *Boatner*, *Block* controls over *Boatner* under this Court's prior panel precedent rule. *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018) ("The prior-panel-precedent rule requires subsequent panels of the court to follow the precedent of the first panel to address the relevant issue, 'unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.'" (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001))).

Nonetheless, *Boatner* is indicative of a prevalent[32] and fundamentally flawed view of the government's role at sentencing. At sentencing, the government is not like a party in a civil suit that may stipulate to whatever facts it wants. Instead, the government is obligated under both § 3661 and the real conduct model of our modern sentencing system to inform the district court about each and every fact relevant to sentencing, regardless of any promises the government may have made in the plea agreement. While my view on sentencing could, at first blush, lead to fewer plea agreements and thus more trials, enforcement of the government's disclosure obligations is necessary to ensure "similar sentences for those who have committed similar crimes in similar ways" as

---

[32] As an example of *Boatner*'s prevalence, the Majority relies in part on *United States v. Taylor*, 77 F.3d 368, 371 (11th Cir. 1996), Majority Op. at 19, a post-sentencing guidelines case, which in turn relied largely on *Boatner*'s flawed, pre-guidelines reasoning. *Id.* at 370–71 (citing *Boatner*, 966 F.2d at 1578–79).

20-12744        Tjoflat, J., Dissenting                    41

Congress intended.  *Booker*, 543 U.S. at 253, 125 S. Ct. at 760.  Accordingly, I recommend that this Court take up the issue of the government's obligations under § 3661 en banc as soon as possible, either in this case or the next one like it.  This would clarify our contradictory precedent and ensure sentencing in this Circuit is carried out as Congress intended.

## VII.

What are the district judges of this Circuit to make of today's ruling?  The District Court here is deemed to have committed plain error even though nothing in binding precedent told the Court that it erred.  To avoid today's result, a district judge, prior to sentencing, must become acquainted with the case at hand from beginning to end.  In particular, the judge must have digested the parties' plea agreement, and with eyes fixed on the agreement's provisions throughout the sentencing hearing, the judge must monitor the lawyers' conduct to ensure that the government does not breach them.  The judge must assume that defense counsel is incompetent, and that the government's attorney will take advantage of her incompetence.  *Strickland*'s presumption that counsel is competent cannot be indulged.  To put it bluntly, district judges will have to put their thumbs on the defendant's side of the scales and thus create the appearance of partiality.  And district judges will do so without any real assurances that the government has disclosed all the facts relevant to sentencing.  All of that said, I respectfully dissent.