[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11447

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NISELIO BARROS GARCIA, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cr-60134-AHS-2

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Niselio Garcia, Jr., appeals his conviction and 48-month sentence for conspiracy to commit money laundering. He argues that (1) the government breached his plea agreement by failing to recommend self-surrender at sentencing, and (2) his sentence is substantively unreasonable. After review, we affirm.

## I.    Background

In July 2023, a federal grand jury returned an indictment against Garcia, among others, charging him with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h); three counts of engaging in transactions in criminally derived property, in violation of 18 U.S.C. § 1957(a); and one count of unlicensed money transmitting business, in violation of 18 U.S.C. § 1960. Garcia entered into a plea agreement in which he agreed to plead guilty to conspiracy to commit money laundering in exchange for the dismissal of the other counts. The factual proffer provided that from 2017 through 2019, Garcia "suppl[ied] bank accounts to receive proceeds from business email compromise scams, romance scams and other fraud schemes." He "then used a cryptocurrency exchange to conceal and transfer the fraud proceeds" to another co-conspirator "in exchange for a fee."

As relevant to this appeal, the plea agreement provided that the government would make certain guidelines calculations recommendations, but outside of those express agreed-upon terms

otherwise reserved the government's "right to make any recommendation as to the quality and quantity of punishment." The agreement further provided that "[t]he defendant understands and acknowledges that [he] may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by the defendant and the government." Finally, the agreement provided that "[t]his is the entire agreement and understanding between the government and the defendant. There are no other agreements, promises, representations, or understandings." The agreement did not contain any provisions or otherwise mention self-surrender. Garcia signed the agreement.

At the change-of-plea hearing, Garcia's counsel stated that she would "be requesting that [Garcia] remain out [post-sentencing] and also that he self-surrenders, and we're also looking to allow him to remain out for most of the summer, and I can explain that to [the court] now or later." The district court explained that it would take up that issue after the plea colloquy. After Garcia pleaded guilty and the district court found his plea was knowing and voluntary, the court turned to the self-surrender request. The government confirmed that it had no objection to the request. His counsel explained that Garcia needed to remain out of custody during the summer months because he worked in solar panels and needed to earn enough money over the summer to support his wife and two children (one in college and another who was 15) during his incarceration. His counsel indicated that the court could go ahead and sentence Garcia in April and then set a

self-surrender date four to five months later. The government stated that it had no objection. The district court indicated its tentative agreement with the request and set the sentencing for April 2024.

Garcia's presentence investigation report ("PSI") indicated that his advisory guidelines range was 46 to 57 months' imprisonment, and he faced a statutory maximum term of 20 years' imprisonment. With regard to his personal history and characteristics, the PSI stated that Garcia was born in Brazil and lived there until 2014 when he and his family relocated to the United States. Garcia's wife did not work and was very distraught and depressed over Garcia's legal issues. They have two children—one in college and one in high school. Garcia was the sole provider for his family.

The government filed a sentencing memorandum requesting a 57-month sentence. Garcia in turn filed a sentencing memorandum requesting a downward variance of 24 months' imprisonment, citing the need to avoid unwarranted sentencing disparities for these types of crimes, and the fact that he was the sole provider for his family. He maintained that his wife suffered from debilitating mental health issues, including major depressive disorder, anxiety, and PTSD, and she was not able to work and needed assistance with activities of daily living.[1] He also asserted that he needed to provide financial and emotional support for his

---

[1] Garcia submitted medical documents in support of his wife's conditions.

two children.  In support of his request, he submitted character letters from family and friends and his own personal statement.

At sentencing, the district court stated that it had the plea agreement, factual proffer, indictment, the PSI, the parties' sentencing memoranda and exhibits, and Garcia's character letters. The parties stated that they had no objections to the PSI, and the district court adopted it in full.  The government then presented its argument as to why a 57-month sentence was appropriate, emphasizing that the consequences of Garcia's actions were "severe for the victims," and noted that, without Garcia, the "fraudsters" would not have made money.  The government further contended that since pleading guilty, Garcia had "failed to cooperate fully with the government[] as promised."  For example, Garcia had not turned over complete financial records, and the partial records he did produce suggested that he was hiding assets. And since his arrest, he had sent approximately $76,000 to unknown parties when that money should have gone to the victims.  Thus, the government asserted that Garcia did not take full accountability for his actions, and a high-end guideline sentence was appropriate to reinforce respect for the law and to deter others from enabling fraud and withholding cooperation post-conviction.  The government then presented testimony from one of the victim's family members, nothing how the defendants had gone to great lengths to defraud her 84-year-old mother of her life savings even after she told them that she had a brain tumor and was undergoing brain surgery.  She requested the maximum sentence.

Garcia's counsel apologized to the victim and her family, but also noted that "Garcia had nothing to do with the underlying . . . scams" and did not ever interact with the victims.  Rather, his role was limited to the money laundering aspect and urged the court to consider his actions "in proportionality to the bigger scheme." Counsel noted that Garcia had only received $400,000 for his participation, which was a very small proportion of this multi-million dollar scheme.  She then reiterated her arguments from the sentencing memorandum as to why a downward variance of 24 months was appropriate and urged the court to consider Garcia's need to support his family.  Finally, counsel argued that there were explanations for "the insufficiencies" in Garcia's financial disclosures.  He was not trying to hide assets; rather, property and vehicles were in his adult daughter's name because he was unable to get credit with his credit score.

Garcia then made a statement expressing remorse for his actions, but also stating that he did not realize he was involved in "a fraudulent act."  He elaborated on his family's situation.  He explained that he and his wife relocated to the United States in 2014 to give their children a better life and education.  The family initially was doing very well, but in 2018, they joined a church that offered a business investment (the underlying fraud scheme).  They "sold [their] three houses" so that they could invest in the business. Then "they lost everything because of [the] fraud," which left them in financial straits and caused his wife to fall into a deep depression. They were evicted, their cars were repossessed, and they had to move into a friend's vacation home.  He explained that, since losing

everything, he had secured a job at the solar panel company and was working to rebuild their lives, but in the meantime they had to rent a home and buy a car under their daughter's name because of his and his wife's negative credit history. Garcia again explained that he did not know the other people involved in the fraud scheme, was sorry for the "mistake [he] made," and he begged the court to show mercy.

The district court expressed concern with Garcia's statement and that he did not fully appreciate the nature of his crimes or the fact that he was not the victim. The court also expressed concern that the reason he wanted to self-surrender at a later date was so that he could make money for his family, but any money he made should be going to pay back the victims, not his family.

The government then presented rebuttal argument as to why a lower sentence was not appropriate based on Garcia's family's situation. Additionally, the government stated for the first time that, in light of Garcia's uncooperative conduct since entering his plea, the government now considered him a flight risk and opposed his self-surrender request and requested that Garcia be detained immediately.

In response, Garcia's counsel reminded the court that the self-surrender date was discussed at the change-of-plea hearing, and it "was part of [the] agreement with the government" and the government had been fine with a surrender date after the summer. Accordingly, she "ask[ed] the [c]ourt to continue that" because

"[t]hat was something that Mr. Garcia took into consideration when accepting the plea, because he knew that he would have to be able to continue to support his family." The government stated that it "had no objection at the time, but the context [had] changed from that" based on the incomplete financial disclosures.

The district court stated that it had considered all the statements made at the hearing, the PSI, the guidelines, and the 18 U.S.C. § 3553(a) sentencing factors, and imposed a within-guidelines sentence of 48 months' imprisonment to be followed by three years' supervised release. The court denied his self-surrender request and remanded him into custody. This appeal followed.

## II.    Discussion

Garcia argues that (1) the government breached his plea agreement by failing to recommend self-surrender at sentencing, and (2) his sentence is substantively unreasonable. We address each argument in turn.

### A.  Whether the government breached the plea agreement

Garcia maintains that his plea was based in part on the assurance that he would be able to self-surrender at a later date so that he could work over the summer and provide financial support for his family. He notes that the government raised no objection to his request at the change-of-plea hearing, and he maintains that the government breached the terms of his plea agreement by changing its position on self-surrender at sentencing. Accordingly, he maintains that his sentence must be vacated and remanded for resentencing.

Ordinarily, "we review *de novo* whether the government has breached a plea agreement." *United States v. Malone*, 51 F.4th 1311, 1318 (11th Cir. 2022). When, however, as here, a defendant fails to raise a breach of plea agreement objection before the district court, we review only for plain error. *Id.* Plain error occurs where: (1) there is an error; (2) "that is plain"; and (3) it "affects [the defendant's] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alteration adopted) (quotations omitted). "If all three conditions are met, [we] may then exercise [our] discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted). In other words, "plain error review should be exercised sparingly, and only in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotations and citation omitted).

"[I]n determining whether the government has breached a plea agreement, we must first determine the scope of the government's promises." *Malone*, 51 F.4th at 1319 (quotations omitted). To determine the scope of such promises, we look to the terms of the plea agreement, and the "unambiguous meaning [of those terms] controls." *Id.* Using an objective standard, "we ask whether the government's conduct conflicted with the defendant's reasonable understanding of the government's promises when he entered his guilty plea." *Id.* A breach exists where the government "fails to perform the promises on which the plea was based." *Id.* If we determine that the government breached the plea agreement,

we may vacate the sentence and remand for resentencing in accordance with the terms of the agreement. *Id.*

Here, the government did not breach the plea agreement. The plea agreement did not mention self-surrender as a condition of Garcia's plea. Further, although the government agreed to make certain recommendations regarding the guidelines, outside of those agreed-upon terms the government expressly reserved its "right to make any recommendation as to the quality and quantity of punishment." This language would encompass the government's recommendation as to whether Garcia should be permitted to self-surrender at a future date post-sentencing. Finally, the agreement provided that "[t]his is the entire agreement and understanding between the government and the defendant. There are no other agreements, promises, representations, or understandings." Thus, based on the plain and unambiguous language of the plea agreement, Garcia's plea was not conditioned on his ability to self-surrender.

To the extent that he argues that his plea colloquy demonstrates that his plea was based on such a condition, his argument is unavailing. The self-surrender request was not discussed until after Garcia entered his plea of guilty and the district court accepted it. Thus, it could not have been a basis for the guilty plea itself. Furthermore, the fact that the government stated at the change-of-plea hearing that it had no objection to self-surrender at that time does not indicate that the government "made a material promise" to recommend self-surrender at sentencing. Thus, at a

minimum, the scope of the government's promise as to whether it would recommend self-surrender at sentencing was left open to doubt, which means that any error in this case was not plain. *United States v. Sosa*, 782 F.3d 630, 637 (11th Cir. 2015) ("For an error to be considered plain, the error must be clear or obvious, rather than subject to reasonable dispute.  In the context of plea agreement breaches, . . . [n]ot all breaches will be clear or obvious," such as when . . . the scope of the government's commitments [is] open to doubt." (quotations and citation omitted)).

Moreover, even assuming plain error occurred, Garcia cannot show that it affected his substantial rights because, even if the government had made a self-surrender recommendation, it is uncertain whether the district court would have granted the request, particularly given the district court's expressed concern over Garcia's statement at sentencing.  *See Rodriguez*, 398 F.3d at 1299–1300 (explaining that to show that an error affected a defendant's substantial rights, the error "must have affected the outcome of the district court proceedings" and a defendant cannot make this showing "if the effect of the error is uncertain" (quotations omitted)).  Accordingly, Garcia is not entitled to relief on this claim.

### B.  *Whether Garcia's sentence is substantively reasonable*

Garcia argues that his within-guidelines sentence is substantively unreasonable because it is greater than necessary to satisfy the purposes of the § 3553(a) sentencing factors and failed to account for his specific characteristics and mitigating

circumstances. He maintains that a downward variance was appropriate for all of the reasons set forth in the district court.

We review the substantive reasonableness of a sentence under a deferential abuse of discretion standard, asking whether the sentence is reasonable in light of the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007).

A district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (quotations omitted). The burden rests on the party challenging the sentence to show "that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Id.*

The district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. 18 U.S.C. § 3553(a)(2). In determining the appropriate sentence, the district court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant"; the guidelines range; the "kinds of sentences available"; "the need to avoid unwarranted sentence

disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution." *Id.* § 3553(a)(1), (3)–(4), (6)–(7).

Importantly, the weight given to a particular § 3353(a) factor "is committed to the sound discretion of the district court," and it is not required to give "equal weight" to the § 3553(a) factors. *Rosales-Bruno*, 789 F.3d at 1254 (quotation omitted). "We will not second guess the weight given to a § 3553(a) factor so long as the sentence is reasonable under the circumstances." *United States v. Butler*, 39 F.4th 1349, 1355 (11th Cir. 2022). We will "vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotations omitted).

Here, the district court did not abuse its discretion in imposing a sentence of 48 months' imprisonment, which was near the bottom of the guidelines' range. The district court explained that, in reaching this sentence, it had considered the parties' sentencing arguments and statements made at sentencing, the PSI, the guidelines range, Garcia's character letters, his mitigating circumstances regarding his wife and his children, and the § 3553(a) factors. The court also explained its concern for the seriousness of the crime and the fact that Garcia's statement indicated that he did not take full responsibility for his actions and considered himself a

victim.    Thus, the district court correctly considered the particularized facts of the case and acted within its discretion in giving more weight to certain sentencing factors over others.  18 U.S.C. § 3553(a)(1); *Rosales-Bruno*, 789 F.3d at 1254.  It was not required to address all the § 3553(a) factors or all of Garcia's arguments in mitigation.  *See United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) ("[T]he district court need only 'acknowledge' that it considered the § 3553(a) factors, and need *not* discuss each of these factors . . . ."    Likewise, the "failure to discuss [certain] mitigating evidence [does not] mean[] that the court erroneously ignored or failed to consider this evidence . . . ." (quotations omitted)).

To the extent that Garcia argues that the district court failed to account for unwarranted sentencing disparities, his argument is undermined by the record.    The district court engaged in significant discussion regarding the statistics presented by Garcia's counsel and it explained why those general statistics did not reflect similarly situated cases.  Moreover, "[o]ne needs to have more than the crime of conviction and the total length of the sentences to evaluate alleged disparities.  The underlying facts of the crime and all of the individual characteristics are relevant." *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015).  Garcia did not provide a detailed basis for comparison and relied only generally on statistics.

Finally, we note that Garcia's 48-month sentence is within the guidelines range and well-below the statutory maximum of 20

24-11447               Opinion of the Court                    15

years' imprisonment, both of which are indicators of reasonableness. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily . . . expect a sentence within the Guidelines range to be reasonable." (quotations omitted)); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (explaining that a sentence that is below the statutory maximum is an indicator of reasonableness). Accordingly, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (en banc) (quotations omitted). Consequently, we conclude that Garcia's sentence is substantively reasonable, and we affirm.

**AFFIRMED.**